## No. 12,633.

## UNION NATIONAL BANK OF NEW ORLEANS VS. THE MANHATTAN LIFE INSURANCE COMPANY OF NEW YORK.

### SYLLABUS.

One applying for life insurance stated in his application for a policy, that he had never at any time prior, applied for a policy of insurance on his life and been rejected.

This was not true. He had applied and had been rejected, not on account of ill-health or unsoundness of any kind, but because of his unusual request in regard to his age. To this stage of the case, the court affirms Weil vs. New York Life Insurance Co., 47th Ann., 1405, as applying to the facts the head note thus far indicates.

But it further appears that the insurance was taken for the security of a creditor of the insured, and this to the knewledge of the company, that all the premiums paid were paid by the creditor, amounting to more than three thousand dollars.

The company had at hand or within its reach evidence of the misrepresentation which consisted in failure to disclose that he had been rejected for the reason that he had asked to be permitted to insure as being fifty-one years of age, though he was fifty-two years of age.

It does not appear that he (the assured) intended to deceive. There was no motive for deception when his application was made to defendant for a policy.

If the officers did not consult the record of rejections for sometime after insurance, they failed to prove that they had not notice to disprove the *prima facie* evidence of notice admitted. Later the medical examiners of the defendant having been notified of the rejection, no steps were taken to inform the creditor and cancel the policy, or to enable the holder of the policy to protect itself against loss.

HELD: That the defendant company is estopped as against the third person in good faith.

It should, within a reasonable time after it found out that the assured had not properly answered questions propounded, have informed the holder of the policy. It was a duty of the company to give notice to the holder of the policy.

The knowledge of the agents and officers of the corporation regarding business in their charge, is notice to the company; otherwise, save with its consent, a corporation would never be bound by notice of any sort.

ON REHEARING.

1. If an insurance company knows at the time it issues a life policy that the answer of the insured that he had not previously applied to another company for insurance and been declined, was not true, and still saw fit to favorably consider the application, it can not afterwards deny liability on the policy.

2. If, at the time it issues the policy, the company does not know of the untruthfulness of the answer of the insured, but subsequently acquires the knowledge and yet, thereafter, accepts payment of a premium due on the policy, this act constitutes evidence of an election on its part to continue the policy in force.

3. If, after the policy has issued and after two payments of premiums upon it, besides the initial one, have been made, knowledge of the fact of the false answer as to other insurance is brought home to the company, and it inquires into the same and learns from the other company the grounds for its rejection of the applicant, and the insurer then, notwithstanding, permits nine months to elapse without exercising its right to declare the policy void, and this continues down to within a few days of the time when the fourth premium would be due, after payment of which the policy on this ground would become incontestable, and this condition of things ends only by the death of the insured, the company, by its conduct, places itself in a position where it can not successfully impeach the policy for breach of the warranty.

A PPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

*Fenner, Henderson & Fenner* and *E. D. Saunders* for Plaintiff and Appellee.

*Dinkelspiel & Hart,* (E. S. Rapallo, of Counsel), for Defendant and Appellant.

WATKINS, J., filed a dissenting opinion.

On the Rehearing the opinion of the court was delivered by BLANCHARD, J.

The opinion of the court was delivered by

BREAUX, J. This was an action upon a policy of life insurance for $20,000 issued on the 30th day of January, 1893, by the Manhattan Life Insurance Company of New York upon the application of Charles H. Schaefer. The insured named himself as the beneficiary. The policy was assigned to the Union National Bank.

The agent of the company was advised of the fact, that the application was made for the benefit of the bank, and to send the policy to

the bank immediately after its receipt. The bank paid all the premiums.

The premiums annually were $1,118.00. Three years' premiums were paid.

Charles H. Schaefer died on the seventh day of January, 1896, apparently in good health until a few minutes prior to his death.

The policy sets forth, that it was issued in consideration of the application, and the statements and covenants therein, and that if any statement made in the application be in any respect untrue, the policy was to be void, and all payments of premiums forfeited; save after three years it was to be incontestable for any misstatement in the application.

The application concluded: "Warranted that the above statements and answers are full, complete and true in every particular, and they are offered as a consideration for the insurance applied for."

He had, in 1891, made application to the New York Life Insurance Company for a policy of life insurance on his life for $10,000. He was fifty-two years of age at the time, and applied for insurance at the rate of premium applicable to one fifty-one years of age and, substantially, to have his policy dated back for that purpose.

This application was not granted, and the policy applied for, was not issued. It is in evidence, that the laws of the State of New York do not prohibit the dating back of a policy, and that the rules and charter of one of the large companies, at least, have no provisions to the contrary.

The defendant Manhattan Life Insurance Company contended, that a breach of warrnty had been committed by the insured.

The evidence discloses, that the medical directors have a common agency to which the names of persons whose applications have been declined by the respective companies (including the defendant company), are communicated, and that the Medical Board of the New York Life Insurance Company communicated to the common agency the name of Charles Henry Schaefer, as a declined applicant for insurance in that company.

He was rejected, it was asserted, because of his request to have the policy dated back one year less than his age.

It also appers, that on the 1st of April, 1895, the resident physician of the Manhattan Life Insurance Company applied to the New York Life Insurance Company's Medical Director, regarding the cause for

which Charles Henry Schaefer was rejected in May, 1891, and that an answer was given informing him of the cause.

The case was tried by a jury. The verdict was for plaintiff. From the verdict and the judgment of the court, defendant appealed.

The insured here knew, or it was incumbent upon him to know that he had applied for insurance in another company. He had been examined for insurance by a physician of the company, and had signed an application in which he had sought, legitimately enough on his part, to be rated at less than his actual age; it may be, after all, that it would have been legal and binding if the company had chosen to allow the extraordinary request to lessen the amount of his premiums, by charging him, as related to premiums, with one year less than really was his age, i. e.; by charging him premiums as if he had been fifty-one years of age, although he was fifty-two years of age. The nature of the request, and the refusal were such as to impress upon his memory that he had applied for insurance. Only a few years after, he chose to apply for insurance in another company. In his application he declared that he had never been rejected. We find it impossible to conclude, that this declaration was made in accordance with the facts, for in reality it was not.

It is equally as true, that he was bound under the terms of the contract to make only correct answers.

But it is contended by plaintiff's counsel, that the proposition made by the insured regarding his age had no consequences; that the company to which he had applied (the New York Life Insurance Company) saw fit to decline the application; that he, the insured, had the very best grounds to believe that he was absolutely without physical infirmity, and that the refusal to accede to his proposal, had nothing to do with the state of his health; that the insured acted in good faith, and that his memory should not be subjected to the stigma of his having spoken in falsehood.

We have no desire to stigmatize the memory of the deceased.

He, it may be after all, had forgotten the statement contained in his application; it may be, that he had signed it without first having read it. The record does not disclose, that he could have had the least motive for any concealment growing out of the application which had been made by him to insure his life in 1891. He had been pronounced a first-class risk by the Medical Board representing the New York Life Insurance Company in 1891.

It is not for us to reform the contract and make it bend because of these just recited facts. The insured should not have signed the application at all with such a binding condition, in a matter not material, or should have signed only after having read it carefully, and after having satisfied himself that he could safely answer.

The parties made material a fact that would otherwise be immaterial.

Though there was no downright misrepresentation with the view of gaining an advantage, or to commit fraud, for the insured was in all respects a safe risk, nonetheless, under the terms of the contract, the statements should have been strictly and literally true.

Weil vs. New York Life Insurance Company, 47th Ann. 1405.

The second division of the case contains a question of estoppel growing out of the defendant's knowledge of the insured's prior application.

We grant, to the defendant, that there was originally a breach of the agreement. The plaintiff, in our judgment is not absolutely concluded by this breach. It may well challenge defendant's right to have the contract declared void and to have the amount paid by it for premiums forfeited. Plaintiff may, in our view, rightly hold it, defendant, estopped by its knowledge and silence from urging the breach of agreement.

There is a persuasive reason for concluding that through the common agency to which we have alluded in our statement of facts, defendant knew that the insured had made an application to another company prior to his application for one of its policies.

Silence, and the continued collection of premiums after knowledge of this fact, was hardly equitable conduct toward plaintiff, who was not a party to the original act of insurance. Quietly collecting the premiums from an assignee, who was unquestionably in good faith and knew nothing of the untrue statement of the insured in his application for insurance, must, in our view, be considered more effective as an estoppel and waiver, than if such an issue were to arise between the parties to the contract.

Able counsel for the defendant earnestly controvert the position, that the defendant knew of the untruthful statement charged.

If we should grant that the knowledge of the common agency of the companies in New York was not conclusive proof of notice to the defendant, there is other evidence upon the subject.

We have seen that on the first of April, 1895, the resident physician of the defendant company made special inquiry, touching the prior application of the insured, to which the Medical Director of the New York Life Insurance Company replied on the 3rd of April, of that year, giving the desired information. At least from that time there was a duty and a fitting occasion to speak. The officers of the company must have known prior to that time. They had the application of Mr. Schaefer made to them for insurance, in their possession. They had access to all information of the "common insurance agency" in New York, where registry of all rejected applications was kept. The presumption is, that the medical directors made reference to the agency to ascertain the facts of the case. The purpose of the agency was, to furnish such evidence, and the natural inference is, that the officers concerned had knowledge of the statement and of the preceding application by which it was contradicteed.

The applications are referred to the Medical Directors of the company, and they in turn have access to the Central Agency of all the companies. The evidence gives rise to a *prima facie* presumption of knowledge on the subject, sufficient to shift the burden of proof. The defendant company made no attempt to prove by the testimony of any of its officers, that they did not know of the first application.

"The capacity of the party to give evidence may affect the burden of proof." Best on Evidence, par. 274. The same principle regarding the propriety of proof shifting after *prima facie* evidence was applied in Peetz, Widow, vs. Railroad Co., 42 Ann., 546; Day vs. Railway Co., 35th Ann., 694. This, in our view, brings knowledge of the fact to the company. From that standpoint the defendant is estopped from insisting upon a forfeiture of the premium and the avoidance of the policy. Similar issues regarding estoppel were presented in Insurance Co. vs. Nicholls, 24 S. W., 911, in which the plea of estoppel was sustained and the policy was declared not forfeited.

In that case, the court instructed the jury, in the charge: if the defendant had notice that any part of the answer was false, or that it knew that application had been made to defendant itself at a time previous, the defendant was estopped from setting up misrepresentation of the assured as a defense. On appeal, the charge was announced legal.

The defendant contends that it is not bound by the knowledge of those to whom knowledge is traced in this case; that a corporation of

itself can not have knowledge. It is, however, bound by the knowledge of its officers and agents who have charge of the particular business in regard to which knowledge is alleged.

There was a delay of nine months in the case here for decision between the date that the medical examiner of the defendant company received direct information from the New York Life Insurance Company of the first application, and the date of the death of the insured. During that time, it was, we feel confident, the duty of the defendant company to inform the assignee of the policy (the plaintiff) of the misstatement now complained of by the defendant. Having failed in this duty, we find it convincing, that the policy in the hands of a third party as holder is not void. The defendant knew that plaintiff was the assignee from the first, and had paid all the premiums. It does seem to us, that the defendant, in justice to one of the holders of its policies, was bound to inform plaintiff of the breach of the contract, and that it should have raised the point within a reasonable time. There is no evidence before the court of the course usually pursued by the defendant company in such cases.

There is evidence of the manner of proceeding of another company, (like the defendant, one of the most prominent companies) in such cases. It invariably sets up inquiry with the view of rectifying or annulling the contract. We have no reason to conclude from the evidence, that the defendant has heretofore acted differently.

Had the plaintiff been timely informed, it might have avoided risk of loss or questions of the legality of the contract, by taking out other insurance. It put faith in its policy, subject to question because of a breach of which the insurer had knowledge. The least intimation (of the breach) to plaintiff would have been enough to prevent recovery. In its absence we must determine that defendant is bound.

The contract of insurance in this case stipulated, that it could not be changed or waived, save by written agreement. There was no intention, as we construe, in inserting this provision to free it absolutely and forever from all the possible effects of an estoppel. There was no attempt made to alter the contract in any respect, or to change or waive any of its terms and conditions. The whole contract remains unchanged, but the view is taken by us, that the policy having matured by the death of the insured, and defendant not having imparted the knowledge to the plaintiff, it should have imparted within the long period of time that elapsed, the attitude of the defendant toward the

holder of the policy is one which we think operates as an estoppel. The stipulation not to change or waive the terms of the policy as written therein did not have the force and effect of forever freeing the defendant from all possibility thereafter of being estopped.

It could, under the rules applying to estoppel, waive the waiver of the assurer, or at any rate, waive the possibility of urging the point against a policy holder who was a third person.

We have arrived at the conclusion, that defendant has not sustained its defense, that the verdict was correct, and that the judgment should be affirmed.

It is affirmed.

### OPINION ON REHEARING.

BLANCHARD, J. Charles H. Schaefer owed the plaintiff bank a sum exceeding thirty thousand dollars. To protect the bank he assigned to it two policies of insurance on his life, one in the New York Life Insurance Company for $10,000, the other in the Manhattan Life Insurance Company for $20,000.

This suit deals with the latter.

This policy was taken out in January, 1893. Schaefer was then between fifty-three and fifty-four years of age. At that time he carried policies on his life in four other companies.

The policy in defendant company was applied for at the instance of the plaintiff bank. The application for the insurance, made out by Schaefer, directed the policy to be made payable to "S. Chalaron, Agent", and stated the latter's relationship to the insured to be that of creditor. Chalaron was the agent of the plaintiff bank, who was the creditor of Schaefer.

But when the policy came to be made out, it was not written payable to S. Chalaron, Agent, as Schaefer had directed, but was made payable to Schaefer himself. This change was effected at the instance of the company, it being well understood that the purpose Schaefer had in taking out the insurance could be as well subserved by the assignment of the policy to the bank.

It was the bank that paid the premium, $1118.00, when the policy was delivered, and it was the bank that paid the two remaining premiums of $1118.00 each, which accrued prior to the death of Schaefer.

The insurance company, therefore, had full knowledge from the

beginning that it was the bank which was taking out the insurance upon the life of Schaefer for its own protection as against the large indebtedness he owed that institution.

The policy was forthwith, after its issue, assigned to the bank, and due notice of assignment transmitted to defendant company.

Schaefer died on January 7, 1896, just twenty-three days prior to the third anniversary of the date of the policy. If this third anniversary had been reached before his death the policy would, by its terms, have become incontestable as to the grounds upon which the company's defense to this action rests.

Following the death of Schaefer demand of payment of the policy was, after proof of death, made by the bank, and declined by the company on the ground that the insured had made mis-statements in his application for insurance, constituting a breach of warranty and an avoidance of the policy.

This suit followed.

The defense rests on Schaefer's response to two questions. Among the printed questions he was required to answer in filling out the application for insurance was the following: "Have you ever applied to any company for insurance on your life without receiving a policy of the exact kind and amount applied for? If so, state the name of each company."

He filled the blank with the simple response, "No."

Then when he came to fill out the blanks in the printed "Medical Examiner's Report," in response to the 68th question: "Have you ever been declined or postponed by any company? State name of company"—he answered "No."

It appears that these answers were not true, for on the 6th of May, 1891, less than two years prior, an application by him for insurance in the New York Life Insurance Company had been declined.

The application for the present insurance warranted the statements and answers made therein to be full, complete and true in every particular, but stipulated that "they are offered as a consideration for the insurance applied for"; and the policy itself recites that it is issued in consideration of the statements and covenants made in the application, which are constituted part of the contract, and which if untrue avoids the policy and forfeits to the company all payments made upon it.

Upon this state of facts, if this were all there was in the case, if

Schaefer had died without the untruthfulness of his answers as above having seasonably come to the knowledge of the insurer, and after or about the time of his death the company had discovered the same, and set up the breach of warranty as against the demand for payment of the policy, there would be little or no doubt of the legal sufficiency of the defense.

But there was a sequel and from it appears another aspect of the case and one not so favorable to defendant.

If the insurance company knew at the time it issued the policy that Schaefer had previously applied to another company for insurance on his life and had been declined—in other words, if it knew that his answers in this regard were not true and still saw fit to favorably consider his application, the administration of justice would interfere to prevent denial of liability on the policy which followed.

The warranty stipulation as to no declination by any other company was one made or exacted for the benefit of the insurer and could be waived by the latter, and would, of course, be held to have been waived, if, with knowledge of the untrue answer, it had nevertheless executed the contract.

Further, if at the time it issued the policy the company did not have knowledge of the untruthfulness of the answer of the insured, but subsequently acquired this knowledge and yet, thereafter, accepted payment of a premium due on the policy, this act could not be considered otherwise than as an election on its part to continue the policy in force, and it would not be heard to set up its avoidance because of this breach of warranty.

Phoenix Life Ins. Co. vs. Reddin, 120 U. S., 196.

And, still further, if after the policy had issued and after two payments of premiums upon it, besides the initial one, had been made, knowledge of the fact had been brought home to the company that the insured had formerly applied to another company for insurance which had been denied, and it (the present insurer) had inquired into this and learned from the other company the grounds upon which it had declined the risk upon the life of the insured, and then had, notwithstanding, permitted a long period of time (nine months) to elapse without exercising its right to declare the policy void, and this had been continued down to within a few days (twenty-three) of the time when the fourth premium would be due, after payment of which the policy on this ground would become incontestable, and this con-

dition of things had ended only by the death of the insured, the company would by its conduct be placing itself in a position where it could not successfully impeach the policy for breach of the warranty.

Especially is this true, where, to the knowledge of the insurer, another other than the insured had taken out the insurance on the latter's life as protection against a large indebtedness he owed the other. And that is this case. ·

At the time when, in May, 1891, Schaefer applied to the New York Life Insurance Company for the policy which was declined, that company and defendant company were, through their Medical Boards, members of, or subscribers to, a common agency maintained in the city of New York by the principal life insurance companies located there.

The purpose of this agency, or bureau, was to make, keep and preserve a record of the names of those who had applied for insurance in any of the companies subscribing to the agency and *had been declined*. It was for the mutual benefit of the companies. Each was to furnish the agency with the names of rejected applicants, and the records thus kept were always accessible to the companies having . membership in the agency.

Accordingly, when the New York Life declined Schaefer's application, that company reported his name to the agency and it went on the list of rejected applicants. It was there when he made his application to defendant company, and the knowledge of his former rejection was, therefore, easily accessible to the latter.

It is true there is lack of proof that the company had availed itself of the means thus at hand to ascertain at the time whether Schaefer spoke the truth or not when he answered he had never applied and been rejected for insurance. But it does not strengthen the company's case that it did not so avail itself, if it be true that it did not, and whether it did or not was peculiarly within its knowledge, and yet it made no attempt to show the facts by calling any of its officials as witnesses.

. Nor does it appear from the evidence that at the time when the premiums fell due and were paid the company had yet availed itself of the means at hand to discover the true facts.

But it does appear that on the 1st of April, 1895, more than nine months before Schaefer died, the resident physician of defendant company addressed a communication to the New York Life Ins. Co.,

or to its medical director, asking *why* that company had rejected Schaefer's application for insurance made in May, 1891, and that two days later the medical director had replied, giving the desired information.

So that it is shown defendant company had knowledge of the fact of rejection *prior* to the 1st of April, 1895. How much *prior* was best known to defendant, but no light did it shed upon the subject by calling any of its employees to the stand. Nor did it produce the letter of the medical director of the New York Life Ins. Co., giving the reason for the rejection, and the record does not, from any other source, disclose the reason. Enough is shown, however, to impress us with the belief that Schaefer was not rejected because of an adverse condition of health disclosed by the examination then made of him.

On the contrary, the medical examiners of the New York Life reported him as a first-class risk.

In the application he then made he reported his age as 52, but wanted the policy issued as of age 51 years, and asked that it be dated back accordingly. It is quite likely, at least we are left to surmise so, that the company was unwilling to do this and, hence, declined the application.

If this were the case, if it were reported to defendant company that Schaefer had been rejected because of his peculiar request as to the age at which he desired to be rated, and not because of ill health, or unfavorable symptoms likely to affect his health, it might well be that defendant saw no reason for exercising its right to declare the policy it had issued on the life of Schaefer void by reason of his false answer, and concluded to stand by the contract.

It did stand by it for more than nine months thereafter, and repudiated it only when Schaefer died, *just within the time* after lapse of which the policy would have become incontestable.

After the discovery of the breach of the warranty it was *the right* of the company to speak in avoidance of the policy, and we must hold it was likewise its *duty* to speak within a reasonable time thereafter.

It is not the case of acquiescence by mere silence and inaction. After the discovery of the fact of other insurance applied for and declined—how long after we know not, though defendant was in a position to have told us—an investigation was set on foot by the company to ascertain the cause of rejection. This was *action* by the de-

fendant with reference to the breach of warranty, and we must presume that the result of the investigation was so satisfactory that it concluded to let the contract remain intact, else it would have exercised its right to repudiate it and retain the payments made upon the policy, as the terms of the latter permitted.

The company could have insisted upon the avoidance of the policy, or could have waived it, as it might deem most to its interest. But it must make its election to do the one or the other within a reasonable time, having due regard to the rights of others.

Here, had it exercised its right to cancel the policy, the plaintiff bank, having large interests at stake, could have protected itself by taking out other insurance upon the life of Schaefer, for it is in evidence that he remained a good insurable risk, so far as his general health was concerned, down to the time of his death.

Even silence and inaction are, under some circumstances, the means of showing an assent that creates an obligation. C. C., 1817.

Omission to repudiate within a reasonable time is evidence, and may be conclusive evidence, of an election to affirm the contract.

Pollock on Contracts, p. 507; 38 Fed. Rep., 806; 83 Ill., 455; 59 Tex., 512.

Our review of the case has not led to a conclusion different from that first reached, and, accordingly, the judgment appealed from is affirmed.

MONROE, J., takes no part in this decision.

WATKINS, J., adheres to his dissenting opinion.