(38 South. 563.)

No. 15,578.

RICHARD v. SPRINGFIELD FIRE & MARINE INS. CO.

(May 8, 1905.)

NONRESIDENT INSURANCE COMPANY—GENERAL AGENT—POWERS—WAIVER OF CONDITIONS.

1. Where a nonresident fire insurance company appointed a local agent in this state, and supplied him with blank policies signed by the president and secretary of the company, to be filled up, countersigned, and issued as occasion may require, such agent will be considered as having the powers of a general agent as to policies issued by him under such circumstances.

2. An agent authorized to issue policies binds the company by all waivers, representations, or other acts within the scope or requirements of his business, unless the insured has notice of the limitation of his power.

3. Such an agent has the apparent power to waive, prior to a loss, a breach of the iron-safe clause by him attached to the policy, resulting from the failure of the insured, through illness, to make a complete inventory of stock within 30 days from the date of the issuing of the policy.

(Syllabus by the Court.)

Action by Rochbert P. Richard against the Springfield Fire & Marine Insurance Company. Judgment for plaintiff was reversed on appeal by the Court of Appeal, and plaintiff applies for certiorari or writ of review. Judgment of Court of Appeal reversed, and of district court affirmed.

Lewis & Lewis, for applicant. Clegg & Quintero and Kenneth Baillio, for respondent.

LAND, J. On August 25, 1903, plaintiff was insured by defendant against loss by fire in the sum of $1,000 on a small stock of merchandise. The policy was countersigned and issued by the Roos-Edwards Agency, of the town of Opelousas, La. The usual "iron-safe clause" was attached to the policy, and the following indorsement appears thereon, to wit:

"Permission is hereby given for 30 days to take complete inventory of stock."

No inventory was taken, and on November 5, 1903, the agency made the following indorsement on the policy, to wit:

"The assured, under the above named and numbered policy, having been prevented through illness from completing the inventory of his stock of merchandise, a further period of thirty days additional is hereby given in which to complete said inventory."

On November 8th, five days later, the stock of merchandise was destroyed by fire. The company received notice of the total loss before it received notice by mail of the extension of 30 days.

Payment of the policy having been refused, plaintiff brought suit thereon to recover the full amount, and obtained judgment in the district court. The insurance company appealed to the Court of Appeal which reversed the judgment, and the case is now before us on a writ of review.

The Court of Appeal held that the policy was forfeited by the failure of the assured to make the inventory within 30 days, as stipulated, and that the agents had no power, express or implied, to waive such forfeiture by granting an extension of time for the completion of the inventory. It is to be noted that the written extension for 30 days is indorsed on the "rider" containing the iron-safe clause. It does not appear whether the agent overlooked the fact that the clause itself granted this delay, or intended to grant a further delay of 30 days. Defendant's counsel, in their brief, suggest this doubt, and argue that the agent had no power to grant an extension of any kind.

The policy in question was signed by the president and secretary, and was to become valid when "countersigned by the duly authorized Agent of the Company at Opelousas."

This agent had full power to make the contract of insurance, to fill in the blanks, and to attach or indorse on the policy other provisions, agreements, or conditions. He was intrusted by the nonresident company with blank forms of policy, and the assured had no notice of the mandate, other than that conveyed by the policy itself, and the nature of the agent's employment. The last clause of the policy reads as follows, viz.:

"This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be indorsed hereon or added hereto, and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

It follows from the terms of this clause that "provisions, agreements or conditions" indorsed on or added to the policy were subject to waiver written upon or attached to such instrument. The iron-safe clause formed no part of the printed conditions of the policy, but was added thereto by the agent, and hence was subject to the written waiver referred to in the last clause of the policy.

The agent had power to issue and renew policies, to make waivers, and grant permits, and the only question for discussion is whether his mandate or employment in-

cluded the power to waive the forfeiture of the policy resulting from the failure of the insured to complete his inventory within the 30 days stipulated. Doubtless the company or its agent could have insisted on the forfeiture as a legal right, but at the same time would have been compelled to return the unearned premium for 11 months. The agent, being informed of the facts, was called upon to take some action in the premises. He elected to waive the forfeiture, rather than to cancel the policy and return the unearned premiums. This action induced the assured to rely on the policy as a still subsisting protection against loss by fire. This waiver was sent to the company by mail in the usual manner, but was not received until the day after the happening of the loss. The company did not notify the assured or the agent that the waiver was repudiated, and, after proofs were furnished, sent an adjuster to investigate the loss. The adjuster, however, acted under a nonwaiver agreement, and therefore all the defenses of the company were preserved.

The agent was furnished with blank policies signed by the president and secretary of the company, and was in the habit of issuing policies without requiring an application, and without referring the subject-matter to the company, in Springfield, Mass. The agent had apparently undoubted power to issue policies, and to attach thereto all the usual and customary agreements and "riders."

It is argued, however, that the agent had no power to waive conditions added to or attached to the policy at the time of the issuance. The last clause of the policy authorized a written waiver of such conditions, provided it be annexed to the policy. The district judge said:

"The term stipulated for the completion of the inventory is a mere incidental portion of the contract entered into exclusively for the benefit of the insurer. The extension of time and implied waiver of the expiration of the original period for the completion of the inventory were acts done by the agent solely for the purpose of making the contract of insurance available to the insurer as well as to the insured."

The district judge cited authorities to show that the agent had general powers, and argued that, as the agent had authority to issue a new policy to the assured on the same conditions as those contained in the original policy, he had implied authority to recognize the validity of the subsisting contract, and to grant additional time for the completion of the inventory.

The Court of Appeal reversed the judgment of the district court on the authority of the case of Murphy v. Royal Insurance Co., 52 La. Ann. 775, 27 South. 143.

While the case cited is a mine of insurance law, the decision simply recognized and enforced the last clause of the policy, to the effect that no officer or agent of the company should have power to waive or be deemed to have waived any condition of the policy, unless such waiver should be written upon or attached thereto, against the contention that at the very time of the making of the contract the parties thereto had entered into a verbal contract waiving the iron-safe clause and the three-fourths value clause, which were attached to the policy. The court decided correctly that the plain terms of the policy notified the assured that the agent had no power to waive, unless by writing on or attached to the policy.

In the case at bar the waiver was in writing attached to the policy, and was made several months after the contract was executed. The waiver was in due form, and the only question is one of power in the agent. There is in the last clause of the policy a necessary implication that agents, officers, or representatives may waive provisions, agreements, or conditions indorsed on or added to the policy, and may grant privileges or permissions affecting the insurance.

The iron-safe clause was therefore a subject-matter of waiver. The printed policy is a general form applicable to all fire insurance business, and, by its terms, contemplates that the agent making the contract shall have power to add other "provisions, agreements and conditions," and to grant permits or privileges affecting the insurance. The policy bristles with forfeitures for causes existing at the date of the contract or arising subsequently, unless otherwise provided by agreement indorsed on or added to the policy. It is clear that the agent making the contract of insurance under such a policy may modify or change the forfeiture clauses by indorsements on or additions to the instrument. With such power over the matter of forfeitures, it is not difficult to conclude that such an agent may waive a subsequent forfeiture, in the interest of the company which he represents.

"An agent authorized to issue policies binds the company by all waivers, representations, or other acts within the scope of his business, unless the insured has notice of a limitation of his powers. The question always is not what power the agent did in fact possess, but what power the company held him out to the public as possessing." May on Insurance (4th Ed.) § 126.

"A person authorized to accept risks, to agree upon and settle the terms of insurance, and to carry them into effect, must be regarded as the general agent of the company pending negotiations." Id. p. 235. "And the possession of blank policies and renewal receipts signed by the president and secretary is evidence of such general agency." Id.

"If a foreign company appoints A. and B. as local agents, and supplies them with blank policies signed by the company, and which they may fill up and countersign, they are its general agents. 127 Ill. 364, 20 N. E. 77, 11 Am. St. Rep. 121, Continental Insurance Co. v. Ruckman." Id., note.

"That an insurance agent authorized to make contracts of insurance and issue policies may waive forfeitures, and reinstate and restore a void policy, is held by numerous cases." Wood on Insurance, vol. 2, § 415.

In the Murphy Case this court cited with approval the doctrine that an insurance company is bound by the acts of its agent "in all matters within the scope of his real or apparent authority," and that third persons in dealing with such agent, are not bound to go beyond the apparent authority conferred on him. Murphy v. Royal Ins. Co., 52 La. Ann. 782, 27 South. 143. In the case at bar the agent apparently had original powers to make contracts of insurance without previous applications, and without referring the matter to the company. In issuing the policy in question he exercised such original powers, and the company acquiesced therein. The agent had a power of attorney, but the assured knew nothing of its provisions, and it therefore matters not whether it was general or special. The testimony of the agent is positive that the second extension was not subject to the approval or ratification of the company, but was simply notified as in other instances. It is certain that it was written and attached to the policy prior to notice to the company.

Speaking of general agents, Ostrander says:

"Having power to make a completed contract, they will also be presumed to have power, by agreement with the assured, to change, alter, or nullify its terms and conditions at any time after the delivery of the contract, and after it has become binding between the parties, unless limitations are imposed, of which assured has notice." Fire Insurance, p. 551, § 265.

Hence there can be no real distinction between a local agent with power to make contracts of insurance and issue policies, and general agents having the same power. The power to make and complete contracts differentiates such agents from solicitors and other intermediaries between the assured and the company.

Agents, whether local or general, with power to contract, represent the company within the territorial limits to which they are assigned. Their knowledge is imputed to the company, and their acts bind the company within the scope of their employment. The question of the forfeiture of insurance policies comes clearly within such scope, and

is within the apparent authority of such local agents. Every policy of insurance is full of forfeiture clauses, many of which do not affect the soundness of the risk, but at the same time may avoid the policy at the option of the insurer. We consider that it is within the province of a local agent in such cases to decide whether the policy shall continue in force or be canceled. Justice to the insured requires an immediate decision of such questions, which could not be had if the rules of the company required the reference of such cases to the general management, perhaps in a distant state or foreign country. No holder of a policy could afford to await the result of such a reference, nor could any insurance company afford to transact business under such conditions. The agent is present as the representative of his company in all matters of insurance within his territorial district, and his apparent authority cannot, as to the public, be limited by private instructions.

"The authority of an agent must be determined by the nature of his business, and is prima facie coextensive with its requirements." May on Insurance (4th Ed.) vol. 1, § 126, p. 231. "With respect to waiver of the breach of a condition in a policy, the most liberal view is that the agent's authority is coextensive with the business intrusted to his care." Id. p. 232, note, citing Weed v. London & L. Fire Ins. Co., 116 N. Y. 106, 22 N. E. 229; German Ins. Co. v. Gray, 43 Kan. 497, 23 Pac. 637, 8 L. R. A. 70, 19 Am. St. Rep. 150.

In the case at bar we are of opinion that the agent had the apparent power to waive the forfeiture resulting from the failure of the insured to complete the inventory within the 30 days specified in the contract.

This was the only issue discussed or decided by the Court of Appeal. As to keeping a set of books, the obligation did not arise until after completion of the inventory.

As to the charges of fraud and bad faith, they were decided by the district judge to be unsupported by evidence, and were not noticed by the Court of Appeal. The writ of review is intended to correct errors of law,

and this court will not review questions of fact, save in exceptional cases.

It is therefore ordered that the judgment of the Court of Appeal herein rendered be annulled and reversed, and it is further ordered that the judgment of the district court be affirmed, and that defendant pay costs in both appellate courts.