No. 2151

Second Circuit

SHUFF v. LIFE & CASUALTY INSUR-
ANCE CO. OF TENNESSEE

(April 8, 1927.  Opinion and Decree.)
(May 13, 1927.  Rehearing Refused.)
(July 11, 1927.  Writ of Certiorari and
Review Granted by Supreme Court.)

*(Syllabus by the Court)*

1. **Louisiana Digest—Insurance—Par. 45.**

Where a life and casualty insurance policy
specifically provides that no obligation
is assumed by the company prior to
the date thereof, and not then unless
the insured is in sound health, the
company is not bound if the insured
is not in sound health on said date,
even though the policy is made out
and mailed prior to the date it bears,
and at a time when the insured is in
sound health.

2. **Louisiana Digest—Insurance—Par. 45.**

Where a life and casualty insurance policy
provides that no obligation is as-
sumed by the company prior to its
date, the policy takes effect on the
date it bears and not on the date it
was made out and mailed.

3. **Louisiana Digest—Insurance—Par. 22.**

A life and casualty insurance company
is not bound by the acts of one of its
solicitors beyond the scope of his
authority.

4. **Louisiana Digest—Insurance—Par. 20.**

A life insurance policy is a contract be-
tween the parties, who are bound ac-
cording to its specific provisions.

Appeal from the First Judicial District
Court of Louisiana, Parish of Caddo.  Hon.
J. H. Stephens, Judge.

Action by Robert H. Shuff against Life
& Casualty Insurance Company of Ten-
nessee.

There was judgment for defendant and
plaintiff appealed.

Judgment affirmed.

Foster, Looney, Wilkinson & Smith, of
Shreveport, attorneys for plaintiff, ap-
pellant.

Blanchard, Goldstein & Walker, of
Shreveport, attorneys for defendant, ap-
pellee.

ODOM, J.  Plaintiff has appealed from a
judgment rejecting his demands in an ac-
tion on an insurance policy on the life of
his son, Marion Eli Shuff, for the sum
of $1000.00, under which policy plaintiff
is the beneficiary.

Defendant, in answer, admitted that it
issued the policy under which the suit
was brought, and that the policy was in
existence and had been actually delivered
to the deceased several days prior to his
death; but it denies liability thereunder,
its principal defense, and the only one
which it is necessary to state, being that
the policy specifically provided that the
company assumed no obligation prior to
the date of the policy and none then un-
less the insured on said date was alive and
in sound health, it being contended that
on the date of the said policy the insured
was not in sound health but, on the con-
trary, was in a sanitarium, having under-
gone a serious operation.

## STATEMENT OF THE FACTS

The insured under this policy, Marion E. Shuff, and P. P. Roper, were both solicitors for the defendant company in the city of Shreveport. They were roommates and close friends. It was agreed between them that Roper should take Shuff's application for a thousand-dollar policy on his life with the defendant company and that Shuff should take an application for a policy on the life of Roper's baby and that Roper should pay Shuff's premiums and Shuff should pay the premiums on the policy on the life of Roper's baby.

Shuff made application for the policy on November 24, 1922.

He was examined by a physician on the following day and found to be in good health. The application with the physician's certificate was forwarded to the home office of the company at Nashville, Tennessee, and accepted by the company and the policy made out and signed.

The policy is dated December 4, 1922.

It was evidently written prior to that date, for it was sent to the solicitor, Roper, by mail and was in his hands on December 4th.

The policy was sent to Roper to be de-delivered to Shuff, as it was the rule of the company to send all policies to the solicitor who had taken the application to be delivered to the insured.

Policies were delivered on Monday, as the premiums were payable weekly on that day. In order that the policy might be received by the solicitors and delivered on Monday they were made out by the company and mailed to the solicitors during the latter part of the previous week, but bore date as of the following Monday, the day on which they were to be delivered.

According to the rules of the company and under its specific instructions to the solicitors, no policy was to be delivered unless the insured was in sound health on the date of delivery. This rule was understood by both Shuff, who was himself a solicitor, and Roper, the solicitor who received the application and to whom the policy was sent for delivery.

The policy on its face provides that:

"No obligation is assumed by the company prior to the date hereof, nor unless on said date the insured is alive and in sound health."

The policy also stipulates in its face that it is subject to the conditions stipulated on the reverse side thereof and that the same are made part of the contract. On the reverse side of the policy there is printed, under the head, "Limitation of Insurance", the following:

"Within one year from date of issuance of this policy, the liability of the company under same shall be limited under the following conditions, to the return of the premium thereon: * * *

"(2) If the insured before its date has been rejected for insurance by this or any other company, order or association, or has been attended by a physician for any serious disease or complaint; * * *."

It will therefore be noted that the policy in its face and also on the reverse side thereof mentions specifically the date of the policy and not the date of its delivery.

On Saturday, December 2, 1922, two days prior to the date of the policy, the insured was stricken with appendicitis and immediately consulted a physician who ordered him to a sanitarium. He underwent an operation at the sanitarium on December 3, 1922, one day before the date of the policy. He remained at the sanitarium until the date of his death, December 19, 1922.

The policy was in the hands of Roper, the solicitor, on December 4th. Roper understood that he was not permitted under the rules of the company to deliver the policy unless the insured was in sound health, and for that reason he held up delivery until the 8th, on which date he saw the insured at the sanitarium, and at the insured's request he delivered the policy to the insured's sister-in-law and gave as his reason for doing so at that time that the physician in charge told him that Shuff was out of danger, and could be carried home in a week.

The physician says he did not tell Roper that, and further testified that Shuff was in a critical condition from the date on which the operation was performed.

### OPINION

The policy is dated December 4, 1922. It specifically provides that:

"No obligation is assumed by the company prior to the date hereof, nor unless on said date the insured is alive and in sound health."

The insured was alive on said date, but not in sound health. Two days prior thereto he was stricken with appendicitis and underwent an operation on the 3rd of December, one day previous to the date of the policy.

It is conceded that the policy was made out and mailed by the company to Roper, the solicitor, prior to the date which it bears. Whether it was placed in the mails prior to the date on which the insured was stricken or while he was in sound health is not clear; but we think the testimony warrants that conclusion.

It is plaintiff's contention that the contract was complete and the obligation of the company attached not on December 4th, the date thereof, but on the date the policy was deposited in the mails by the company; and he cites the cases of Chapman vs. Mutual Life Ins. Co., 146 La. 665, 83 South. 887, and Coci vs. New York Life Ins. Co., 155 La. 1065, in support of that contention.

In those cases it was held that the policies were delivered to the insured when they were deposited in the mails addressed to the local agent.

But those cases are not in point and do not support plaintiff's contention for obvious reasons.

In both of the cited cases the date of the delivery of the policy was material.

In the Chapman case the application for the policy, which was by its terms made a part thereof, specifically provided that:

"The proposed policy shall not take effect unless and until the first premium shall have been paid during my continuance in good health, *and unless also the policy shall have been delivered to and received by me during my continuance in good health.*"
(Italics, ours.)

The application for the policy was dated September 20, 1915, was accepted by the company, and the policy issued. The policy itself was dated September 20, 1915, bearing the same date as did the application, and the future premiums were to be paid on that date. But the policy was not to take effect unless the first premium was paid and unless it was delivered while the insured was in good health. The first premium was paid by Jeter, the agent, on September 20, 1915, and the policy was mailed to him at Shreveport and was received on October 1st. On those dates the insured was in sound health. So that the date of the delivery of the policy became and was a material issue to be determined.

It was not provided that the policy was to take effect on September 20, 1915, the date thereof, provided the insured was then in good health, but provided that he should be in good health when delivered. So that under the application, which was made part of the policy, the obligation of the company came into existence not on the date of the policy provided the insured was on said date in sound health, but provided he was in sound health on the date of the delivery thereof.

The application was accepted, the first premium paid and the policy made out, all while the insured was in sound health. The court held that delivery, as between the company and the insured, took place when the policy was placed in the mails.

In the Coci case, supra, the application, which was made part of the policy, contained the stipulation that:

"The insurance hereby applied for shall not take effect unless the first premium is paid and the policy is delivered to and received by me during my lifetime and in good health."

The application was accepted, the first premium paid, and the policy issued and mailed to the local office in New Orleans, all while the insured was in good health, but was not actually handed to the insured until after the insured had been stricken with the malady from which he died.

The court, after stating that the jurisprudence generally is not in harmony with its holding, held, as it did in the Chapman case, that, under the circumstances, delivery of the policy took place when it was deposited in the mails.

The difference between those cases and the one at bar is this: in those cases the contract provided that the policy should not take effect unless the first premium was paid and the policies delivered while the insured was in good health.

In the case at bar the policy specifically provides that it shall not take effect unless the insured is in good health on the date thereof, to-wit: December 4, 1922, or, to quote from the policy:

"No obligation is assumed by the company prior to the date hereof, nor unless on said date the insured is alive and in sound health."

There is not a line, not a word, in the policy with reference to the delivery thereof. Under the specific terms of the policy the company obligated itself to pay the insured $1000.00 in case of his death, not if he was alive and in sound health when the policy was delivered, but on condition that he should be alive and in sound health on December 4, 1922; and under

specific arrangements with its solicitors the policy was not to be delivered until December 4, 1922, and not then unless the insured was in sound health.

On that date the insured was alive but admittedly not in sound health. On that date he was in a sanitarium in a serious condition, having undergone an operation for appendicitis on the day previous.

Can it be stated that the court should hold that this policy took effect from the date on which it was placed in the mails by the company in Nashville, Tennessee, when it provides in specific terms that it shall take effect on December 4, 1922, and not then unless the insured is on said date in sound health?

To so hold would be, in effect, to recast and rewrite the contract between the company and the insured; which the court cannot do.

A policy of insurance is a contract between the parties which is binding upon them as written.

Counsel for plaintiff next contend that knowledge of the agent is notice to the company, and that the company, through Roper, its solicitor, waived the conditions of the policy by delivering it when the insured was not in sound health.

In support of their contention they cite:

Union National Bank vs. Manhattan Ins. Co., 52 La. Ann. 36, 26 South. 800.

Richards vs. Springfield F. & M. Ins. Co., 114 La. 800, 38 South. 563, and cases from other jurisdictions.

None of them support the view that the insurer in this case became bound because of the fact that Roper delivered the policy with knowledge of Shuff's condition.

In the case of Union National Bank vs. Manhattan Ins. Co., 52 La. Ann. 36, 26 South. 800, supra, the company sought to avoid the policy on account of a breach of warranty, and the court held that the company, having full knowledge of all the facts, and having, with such knowledge, accepted the premiums paid by a third person, could not be heard to set up its avoidance because of the alleged breach of warranty.

The case of Richards vs. Springfield F. & M. Ins. Co., 114 La. 800, 38 South. 563, involved a fire policy. The policy was issued by the local agent who, said the court:

"Had full power to make the contract of insurance, to fill in the blanks, and to attach or indorse on the policy other provisions, agreements, or conditions. He was intrusted by the non-resident company with blank forms of policy, and the assured had no notice of the mandate, other than that conveyed by the policy itself, and the nature of the agent's employment.

"The power to make and complete contracts differentiates such agents from solicitors and other intermediaries between the assured and the company.

"Agents, whether local or general, with power to contract, represent the company within the territorial limits to which they are assigned. Their knowledge is imputed to the company, and their acts bind the company within the scope of their employment."

The distinction between those cases and the one at bar is seen at a glance. Here, Roper was not the agent of the company but a mere solicitor. He had no power or

authority to make a contract or to alter it. Not only did the company's solicitors not have authority to alter or change the contract but the superintendent and assistant superintendent had no such authority, for the policy in its face provides, under the head, "Alterations and Waivers", as follows:

"Agents (which term includes superintendents and assistant superintendents) are not authorized to make, alter or discharge contracts or waive forfeitures. * * Any erasure or alteration made herein except by endorsement signed by the president, secretary, actuary, or other officer of the company, shall be void."

See Dominick vs. Detroit F. & M. Ins. Co., 147 La. 549, 85 South. 236.

Not only did Roper have no authority to bind the company, under the terms of the policy itself, but when he delivered the policy he violated specific instructions of the company. He and all of the other solicitors had explicit instructions not to deliver any policy unless the insured was in sound health on the date of the delivery.

. In a letter which Roper wrote to the company, which was admitted in evidence by consent, he stated that he had made a mistake. On receiving the policy, on the 4th of December, he carried it to the sanitarium where Shuff was in bed. He did not deliver it then, because Shuff was not in sound health, but did deliver it four days later, assigning as his reason for doing so that Shuff's physician had told him he was out of danger. The physician denies this.

More than that. Shuff knew that he had no right to the policy, for he, like Roper,

was a solicitor for the company and knew the rule.

The company received no premium on the policy and waived nothing. In a premium receipt book carried by Roper and introduced in evidence, we find that he credited a payment of $1.00 on December 4th and the like amount on December 11th, December 18th and December 25th. These premiums were not sent to the company, for the reason, as we understand it, that the first premiums paid were to be retained by the solicitor as his commission.

The appearance of the book indicates that all these credits were made at one and the same time. These amounts, if paid (and we doubt it), were not sent to the company. According to the book, one payment was made six days after Shuff's death, which occurred on December 19th.

The plaintiff made no alternative demand for the return of the premiums which he alleges were paid.

For the reasons assigned, the judgment appealed from is affirmed with costs.