This case is before us on an appeal from a judgment of the District Court sustaining defendant's exception of no cause or right of action to a petition filed by plaintiff in which it sought to hold defendant liable for the full value of an airplane insured by defendant and owned by plaintiff at the time of its destruction.
The exception contains no recital of the grounds upon which it was based, but we learn from reading the written opinion of the learned District judge that he maintained the exception because the petition alleged that there had been a change in the ownership — not endorsed on the policy — of the airplane between the time the policy was issued, April 29, 1946, and the date of its total destruction, June 4, 1947.
The petition recites that one Harold Knox, the agent of the defendant who issued the policy, had knowledge of the transfer of ownership and subsequently received on behalf of his principal premiums due under the policy, and that this knowledge and acceptance of premiums constituted a waiver of the transfer-of-ownership exclusion clause.
The policy sued on is attached to the petition and contains under "exclusions" a provision that the policy does not apply to loss or damage occurring after transfer of the interest of the insured in the aircraft without the written consent of the company. Defendant's contention is that since the petition recites that ownership of the aircraft was transferred and no written consent of the company is shown or alleged, the above exclusion clause applies and therefore the petition sets forth no cause of action under the policy.
The following facts — accepted as true for the purposes of this exception — are set forth in the petition. On April 29, 1946, one Charles Arneson mortgaged his Piper Cub airplane to the Aviation Finance Company, Inc., agreeing to pay $1946.28 in eighteen monthly installments beginning May 29, 1946. Paragraph five of the act of mortgage relative to insurance read as follows:
"5. Mortgagor agrees to take out, pay for and keep in full force and effect a policy or policies of insurance, in form satisfactory to Mortgagees and issued by an insurance carrier approved by Mortgagee (covering both Mortgagee and Mortgagor) for the hazards of fire, theft and total or partial destruction, and such additional hazards as may be mutually agreed upon by Mortgagor and Mortgagee, and the loss under every such policy shall be paid first to the Mortgagee or its assigns up to the amount of the obligation secured, and the balance, if any, to the Mortgagor; said policy to be in the possession of the Mortgagee until satisfaction of all obligations secured by this mortgage. In the event that Mortgagor should for any reason fail to take out said insurance above referred *Page 797 
to, or pay for the same, the Mortgagee may, at the cost and expense of the Mortgagor, take out and pay for such insurance, and any sums advanced therefor shall be added to the principal of said promissory note and secured by this Chattel Mortgage as set forth in paragraph (6) following. Any sums received upon cancellation of any policy may be applied by Mortgagee upon the then remaining balance of any obligation secured hereby."
At the time of the execution of the mortgage and note Arneson was issued a policy of insurance with the defendant company for an eighteen month period beginning April 25, 1946 with a loss payable clause to the owner and to the Aviation Finance Company, Inc.
The petition recited:
"4. * * * This policy was issued through the Louisiana Underwriters Agency, Inc., a corporation organized and existing under the laws of the State of Louisiana, domiciled in the City of Baton Rouge and having been issued by Harold Knox, as manager of said corporation; the said Harold Knox also accepted the chattel mortgage and delivery of the note described in the preceding allegations in his capacity as an officer of the Aviation Finance Company, Inc., all of which is more fully shown by reference to the copy of the chattel mortgage described above and by reference to a duplicate of the Aircraft Hull Policy described in this allegation, which is hereto attached and made a part and portion hereof for all purposes.
"5. Thereafter, to-wit on January 26, 1947, the Monroe Air Park, then a partnership composed of G. Foster Wallace and H. Girardet Prophit, Jr. did purchase the hereinabove described airplane from Charles Arneson, paying him the agreed price for the equity of the said Charles Arneson in the aforesaid described airplane at the time of the sale, and assuming the payment of the balance due at that date by the said Charles Arneson to the Aviation Finance Company, Inc., in accordance with the terms and conditions of the hereinabove described mortgage and note, delivery of the airplane having been made by Charles Arneson to the Monroe Air Park. Knowledge of this transfer and transaction was had by the Aviation Finance Company, Inc., mortgagee under the aforesaid described mortgage, and by the Louisiana Underwriters Agency, Inc., the agent of the defendant, American Aviation and General Insurance Company, which knowledge, it is alleged, can and is by law imputed to the defendant, American Aviation and General Insurance Company.
"6. Thereafter the Monroe Air Park continued to make payments on the aforesaid mortgage and note, in accordance with the terms and conditions thereof and it is specifically allegedthat a part and portion of the payments under the terms andconditions of said mortgage contract covered the premium on theinsurance policy described herein and hereto attached, saidpayments being accepted by both Harold Knox, who was acting asthe agent of the defendant, American Aviation and GeneralInsurance Company and the Aviation Finance Company, Inc." (Italics ours.)
On March 3, 1947, after two payments had been made by Arneson's transferee under the conditions set forth in the above-quoted paragraph 6, the note covering the airplane was purchased by the Southern Acceptance Company, Inc., and subsequent payments were made by plaintiff to that company. The loss of the plane occurred June 4, 1947 and defendant, after receiving notice of this loss, denied liability and issued a notice of cancellation. Subsequently, one of the partners of the Monroe Air Park, mentioned in the above-quoted paragraph 5, sold his interest to one Edward J. Joseph, Jr., who, with Wallace's former partner, became the incorporators of plaintiff, Monroe Air Park No. 1, Inc. The claim against the defendant, upon which this suit is based, was transferred to the plaintiff corporation.
Capable counsel for defendant has cited authorities holding that when the provision of a policy of insurance is plain, it is a legal contract between the parties and "is the law of the case." We recognize this as being a correct statement of the law and conclude that there can be no recovery under the policy sued upon unless *Page 798 
plaintiff's petition discloses that there has been a legal and valid waiver of the relevant "exclusion" clause by a duly authorized agent of the defendant company.
The Louisiana Supreme Court in the case of Fidelity and Casualty Company of New York v. Aetna Homestead Association,182 La. 865, 162 So. 646, cited with approval and re-affirmed the principle that an agent authorized to issue policies of insurance may bind the issuing company by waivers, representation and other acts within the scope of his business, unless the insured has notice of a limitation of the agent's power. Citing Richard v. Springfield Fire Marine Ins. Co.,114 La. 794, 38 So. 563, 565, 69 L.R.A. 278, 108 Am. St.Rep. 359.
In the case of Gitz Sash Factory, Inc., v. Union Insurance Society of Canton, Ltd., 160 La. 381, 107 So. 232, the Louisiana Supreme Court held that the knowledge of an agent of an insurance company will be considered in law as knowledge of the company and that the conduct of insurance company agents, such as will estop their principal from denying liability under a policy of insurance, may be proved by parol notwithstanding a policy requirement that waiver of conditions shall be evidenced in writing. In that case the policy sued upon contained a provision that the entire policy would be void if the personal property therein covered should become incumbered by a chattel mortgage and further provided that no agent, etc., should be deemed to have waived this provision unless such waiver should be in writing and attached to the policy. The Court found that the representative of the defendant's local agency had knowledge of the existence of a chattel mortgage on the property at the time the policy was issued and that the action of the company through its agent in actually issuing the policy and accepting the premium amounted to a waiver of this policy provision notwithstanding that no endorsement of such waiver was made upon the policy.
In the case of Dutton v. Harmonia Insurance Company of Buffalo, N.Y., 191 La. 72, 184 So. 546, 551, the company sought to avoid liability on a policy which stood in the name of a deceased person at the time the policy was issued. The Court, noting that the company, with knowledge that the insured was dead at the time of the issuance of the policy, chose to treat the contract as a valid one by attempting to cancel it and retain the premiums up to the date of cancellation, held that under these circumstances, the contract of insurance was a binding one. The Court stated that the company evidently considered it an unimportant circumstance that the property stood in the name of a deceased person at the time the policy was issued and held the company liable as below quoted:
"* * * because the company was dealing with the real parties who had an insurable interest in the property and the parties definitely agreed upon the amount of the policy, the premium, and the premises to be covered. The policy was issued and delivered and the premium paid and retained by the company. Therefore, it is our opinion that the policy was a valid contract of insurance."
In the case before us, the petition recites that the agent of the insurance company was the agent of the finance company and the person accepting the chattel mortgage on its behalf. The policy attached to the petition showed an annual premium of $388.50 and that the policy was issued for an eighteen month period. The petition further recites that Knox, as agent of defendant, had full knowledge of the transfer of ownership and afterwards received monthly payments and that a portion of each monthly payment (apparently 1/12th of $388.50 or $32.37) was for insurance. Under these allegations, it would be permissible for plaintiff to prove, by cross-examination of Knox or otherwise, that monthly payments of premiums were received by defendant's agent Knox, or that a new payment of premiums was received by the company on the anniversary date of the policy, which included monies paid by the new owners of the airplane. Accepting these allegations as true, we conclude that the petition shows that the defendant's agent had full knowledge of the transfer of ownership and permitted plaintiff *Page 799 
to make payments, including a substantial portion for insurance ($32.37 out of $108.13), and consequently, his principal cannot equitably urge the technical defense that no written endorsement covering the change of ownership had been prepared and attached to the policy. Under the allegations of the petition, Knox had the authority to issue this endorsement on behalf of the defendant company, he had the note and policy in his possession, he had full knowledge of the facts and the written policy provision requiring that change of ownership should be by endorsement and the fact that such endorsement was not issued and attached to the policy could equitably be charged to the neglect or indifference of defendant's agent.
As stated by the Supreme Court of Louisiana in the Gitz case, supra, a waiver may be by conduct and declarations as well as by written endorsement. We quote from that opinion [160 La. 381, 107 So. 233]:
"The decisions of the Supreme Court of this state are in line with the jurisprudence of a majority of the states of the Union, as to the application of the doctrine of waiver by the conduct and declarations of insurance companies, and as to the proof of estoppel by parol, notwithstanding the provisions contained in the policy requiring written evidence as to waiver. Corporation of Roman Catholic Church v. Royal Ins. Co., 158 La. [601], 602, 104 So. 383; Brodie v. Atlas Assurance Co.,158 La. 695, 104 So. 620; Gaudet v. North River Ins. Co.,156 La. 719, 101 So. 118; Investors Mortgage Co. v. Marine Motor Ins. Co., 155 La. 627, 99 So. 486 (on rehearing); Bank [of New Orleans] v. Manhattan Ins. Co., 52 La. Ann. [36], 46, 48, 26 So. 800."
The conduct of defendant's agent in receiving from the new owners the two monthly payments, a portion of which included the premiums due under the policy, in effect recognized the new owners as assured under the policy and constituted a waiver of the transfer-of-ownership exclusion clause contained in the policy.
There is no suggestion in the case before us that any attempt was made by the original insured or by plaintiff or its assignors to conceal the transfer of ownership from the defendant insurance company. Since the petition shows that the agent of the company, with knowledge of the new ownership, received two monthly payments, including substantial premium for the airplane insurance, it follows that the company by receiving the premiums chose to recognize the policy as a valid contract of insurance with the new owners, and equitably — as held by the Supreme Court in the Dutton case — it becomes an unimportant circumstance that the name of the original maker of the note, instead of his transferee, remained as the named assured.
Defendant cites the case of Marcuse v. Upton et al., 9 La. App. 28, 118 So. 790, in which the Court of Appeal for the First Circuit held that an insured who sells his interest in an insured premises prior to the loss, no longer has any interest of any kind in the object insured and consequently cannot collect under a policy in the event of a loss. The Marcuse case is distinguishable from the one before us in that the present plaintiff clearly had an insurable interest in the airplane at the time of its loss. Plaintiff also had an insurable interest in the plane at the time its assignors became an insured by virtue of making the monthly payments, including insurance, and the acceptance of these payments by defendant's agent with knowledge of the transfer.
For the reasons assigned, the judgment appealed from is reversed; the exception of no cause or right of action is overruled, and the case is remanded to the Fourth Judicial District Court for further proceedings in accordance with law. Costs of appeal to be borne by defendant; other costs to await the final outcome of the litigation. *Page 800