**MARYLAND CASUALTY COMPANY,**
Plaintiff,

v.

Rolland CONNER, Charles Jones, Jr., Administrator of the Estate of Eloise Wright Jones, J. O. Smith, Administrator of the Estate of Jean Blanche Robinson, J. O. Smith, Administrator of the Estate of Hezikiah Erwin, Geneva Williams, Administratrix of the Estate of Eugene Garner Williams, Rosemary Graham, Administratrix of the Estate of Gurlie Junior Graham, Ringland Graham, Charles Scott, Palmetto Development Corporation, Evans M. Bunch and Sam J. Bethea, Defendants.

Civ. A. No. 7192.

United States District Court
E. D. South Carolina,
Florence Division.

Dec. 28, 1961.

Wright, Scott, Blackwell & Powers, Florence, S. C., for plaintiff.

Yarborough & Parrott, Bridges & Bridges, Hyman & Morgan, William W. Bennett, Florence, S. C.; Evans M. Bunch, Jr., Sidney T. Floyd, Ogden A. Rankin, Vernoid Bunch and Cleveland Stevens, Conway, S. C.; Hans F. Paul, Charleston, S. C.; E. A. Finney, Sumter, S. C., for defendants.

WYCHE, District Judge.

This is an action under the Declaratory Judgments Act, 28 U.S.C.A. § 2201, in which the plaintiff seeks a determination that its policy of automobile liability insurance was cancelled by notice mailed to the insured defendant Rolland Conner on July 8, 1959, stating that the policy was cancelled as of July 17, 1959, and that no coverage existed thereafter as to an accident in which defendant Rolland Conner and his insured automobile were involved on July 26, 1959. The policy in question was the usual automobile liability insurance policy with coverage limits of $5,000 for a single personal injury, $10,000 maximum for personal injuries in a single accident, and $5,000 property damage, for the period from January 25, 1959, to January 25, 1960.

In compliance with Rule 52(a), Rules of Civil Procedure, 28 U.S.C.A., I find the facts specially and state my conclusions of law thereon, in the above cause, as follows:

### Findings of Fact

1. Prior to the issuance of the policy by Maryland Casualty Company Rolland Conner had carried insurance on his automobile with another company represented by insurance agent Evans M. Bunch in Conway, South Carolina. When this previous policy terminated Bunch was unable to renew or to place coverage with any of the other companies he represented and contacted the insurance agency of Bethea & Bethea in Latta, South Carolina, to see if they could obtain coverage for Conner.

2. Bunch advised Bethea that Conner would not be able to pay the full premium at one time and that the premium would have to be financed.

3. Bethea was able to place the coverage with the plaintiff Maryland Casualty Company, one of the companies he represented.

4. Arrangements were made by Bethea to finance the annual premium with Palmetto Development Corporation, in which Bethea was a stockholder and later a director. This corporation was engaged in the business of financing insurance premiums.

5. The annual premium was paid and Bethea issued Maryland Casualty Company policy No. 3 2509308 insuring Conner's automobile, effective January 25, 1959, to January 25, 1960, and forwarded it to Bunch who delivered it to Conner.

6. Under the premium finance contract with Palmetto Development Corporation the insured made a down payment of $11, and the balance of the premium, plus interest and charges in the amount of $5.12, was to be paid in four monthly installments of $9.28 each, to be paid on February 25, 1959, March 25, 1959, April 25, 1959, and May 25, 1959.

7. In consideration for the advancement by Palmetto of the balance due on the premium the insured assigned to Palmetto as security for the debt any rights the insured might have to any return of the premiums from the insurance company and appointed Palmetto attorney in fact to cancel the policy in the name of the insured in the event the insured defaulted in any installment, and to receive any unearned premium to be credited on the debt. The premium finance contract provided that a default in the payment of any installment for a period of five days after due date would be deemed an election on the part of the insured to cancel the insurance policy and the finance company would thereby be authorized to

notify the insurance company to cancel the policy and return the unearned premium. In executing the contract the insured agreed that the unearned premium would be refunded directly to the Palmetto Development Corporation, the finance company, to be applied to the premium financed debt. The premium finance contract was executed in quadruple with copies going to Palmetto Development Corporation, Evans M. Bunch, the insured Rolland Conner and Maryland Casualty Company.

8. Below the signature of Rolland Conner to this premium finance contract is a contract designated "Agents Agreement" which contains a provision signed by Sam J. Bethea, Jr., of the firm of Bethea & Bethea Insurance Agency, as an individual, and not as agent of the insurance carrier, whereby he warranted, represented and guaranteed to Palmetto his cooperation in every manner available to him under the circumstances to aid Palmetto to "effect such cancellation by the insurance carrier" and that in the event of such cancellation to forward all funds received by him under the contract to Palmetto necessary to satisfy the indebtedness.

9. The February, 1959, payment by Conner was made to Bunch sometime after it was due on February 25, 1959, and a late charge of one dollar was added by Bunch to the regular $9.28 payment.

Bunch remitted this payment by his check No. 717 on March 25, 1959, in the amount of $10.28, payable to Bethea & Bethea Insurance Agency. Bethea in turn sent the payment to Palmetto. No further payments were sent through Bethea, the remaining payments being through Bunch to Palmetto, presumably at the request of Bethea and Palmetto. The March payment was transmitted to Palmetto by Bunch by his check No. 723 in the amount of $9.28 dated March 28, 1959, payable to Palmetto Development Corporation. On May 13, 1959, Bunch issued his check No. 808 in the amount of $23.79 payable to Palmetto Development Corporation, which covered the installments on three accounts with Palmetto, including a payment of $9.78 for Conner, the April 25, 1959, payment. This payment apparently included a late charge of 50¢. The fourth payment on the premium finance contract was due to Palmetto on May 25, 1959, and Conner paid it to Bunch for Palmetto in due time. However, Bunch did not mail this installment to Palmetto until June 8, 1959, when he mailed his check No. 837 in the amount of $30.14 covering several installments, including a payment of $9.28 for Conner. The May payment to Palmetto was not late and no late charge was made or tendered with this payment.

10. Plaintiff introduced the following paper stamped June 8th, 1959:

"TO: Bethea & Bethea Ins. Agency
    P. O. Box 55
    Latta, S. C.
    #228

June 8 1959
FROM: Palmetto Development Corp.
    P. O. Box 501
    Columbia, S. C.

For reason of non-payment, we have today cancelled premium finance contract No. 1838 in the name of Rolland Conner
    P. O. Box 214
    Conway, South Carolina
    23  A  228  #1838  5.12  9.28
which is secured by return premium of Maryland Casualty Policy No. 3–2509308. In accordance with the agreement signed by you in respect of the above contract, you are directed to remit to us at once your chcek in the amount of 9.28 which is the balance due us under the terms of the above agreement.

PLEASE ACKNOWLEDGE RECEIPT OF THIS NOTICE BY SIGNING BELOW AND RETURNING TO US AT ONCE."

The paper was not signed by Bethea and was not returned to Palmetto, as requested. On the paper the following unexplained, circled in ink entries appear: "30.14 15.28 R.P.Ager. 22.52".

Bethea testified he received this paper from Palmetto on June 9, 1959, and about it, he testified as follows: "Q. Was the May payment made? (May payment was the last payment due.) A. The May payment was late, as the February payment was. * * * Q. I say, following May 25, 1959, did you receive a communication from Palmetto Development Corporation in regard to Conner's contract with them? A. I received a notice telling me that it was late. * * * Q. As a result of the receipt of the instrument which you hold, what action did you take? (Referring to document dated June 8, 1959, and received by Bethea June 9, 1959, one day after Bunch had already sent the last payment to Palmetto) A. I immediately notified Mr. Bunch to please notify Mr. Conner to please send me the money so that I might send it back in. Q. The money for what? A. For this payment. (The May payment) THE COURT: Who did you notify of that? Mr. Bunch. THE COURT: You wrote him a letter? A. Yes, sir. * * * Q. What next did you do? A. After I wrote Mr. Bunch requesting that he send the money and be sure and include a dollar late charge so I could send it back in to Palmetto Development Corporation." At this time the May and last payment had already been mailed and received by Palmetto, and the premium finance contract marked paid June 10, 1959. In this connection it should be noted that on the paper stamped June 8, 1959, sent to Bethea by Palmetto, the figure "30.14" with a circle around it, the exact amount sent by Bunch to Palmetto, which included Conner's last due payment, is written in ink.

Nevertheless, without inquiring of the Palmetto Development Corporation, or without having received any further communication from Palmetto, on July 8, 1959, twenty-eight days after the premium finance contract had been marked paid June 10, 1959, Bethea, not Palmetto, sent notice to Conner as follows: "You are notified that your policy identified above is hereby CANCELLED as of 12:-01 A.M. the 17th day of July 1959, from and after which day and hour the policy will no longer be in force. MARYLAND CASUALTY COMPANY (in print) By ——————————————————

Bethea & Bethea Insurance Agency (in typewriting)

Cancelled by reason of: Non-Payment of Premium RP 22.52" (Not "Non-Payment of Installment to Palmetto", which had been paid and credited with payment.) This notice of cancellation was not sent by Bethea at the request of the plaintiff but under the agreement between Sam J. Bethea, Jr. and Palmetto to effect cancellation. The plaintiff in its complaint says that "this action being taken in response to the premium finance contract notice of cancellation given on June 8th, 1959". When Conner received this notice he knew he had paid all payments on the premium finance contract to Bunch for Palmetto and he went to Bunch and told him so. Bunch agreed with him and told him not to worry that he would take care of it or words to that effect. In this connection plaintiff alleges in its complaint "that on June 10, 1959, the defendant Evans M. Bunch, forwarded to the Palmetto Development Corporation his check for around Thirty ($30.00) Dollars in payment of certain premiums of insurance, including a Nine and 28/100 ($9.28) Dollar payment on the Rolland Conner account, which payment, however, did not include a One ($1.00) Dollar reinstatement fee charged by the Palmetto Development Corporation".

11. Even though the premium finance contract was paid in full on June 10, 1959, and marked "Paid" on that date, and not marked "Cancelled", Bethea on August 24, 1959, about thirty days after the accident, in compliance with his agreement with Palmetto sent his personal check payable to Palmetto Development Corporation for $22.52 "Return Premium Rolland Conner".

12. The last payment of $9.28 by Conner was accepted by Palmetto as payment in full of the premium finance contract and never returned to Conner by Bethea or Palmetto; upon receiving this payment Palmetto marked the premium finance contract "Paid", not "Cancelled", June 10, 1959.

13. The premium finance contract was never cancelled; it was paid in full. The insurance policy was not cancelled by the plaintiff or by its authorized agent; it ratified cancellation about two months after the accident.

14. The plaintiff had the right under the policy terms to cancel the policy upon ten days' notice (in this case Bethea gave only eight days' notice). There is nothing in the record to show that plaintiff authorized Bethea to send the notice of cancellation for it. The only ratification of what Bethea did in attempting to cancel the policy was after the accident when it sent Bethea a check to reimburse him for refunding the unearned premium to Palmetto, which was about two months after the accident.

15. Palmetto Development Corporation left with Evans Bunch supplies which included its rates, rate charts, application forms and its finance contract forms. He solicited business for its premium finance contracts at its request, he collected installment payments for it on its premium finance contracts and remitted the payments to Palmetto and frequently held the money for several days until a sum had accumulated. He had a copy of Conner's premium finance contract showing the payments to be paid and when. He collected installments on Conner's premium finance contract with Palmetto's full knowledge, consent and permission, accepting his personal checks for such payments. Evans Bunch was the agent of Palmetto Development Corporation to collect and receive the installments from Rolland Conner on its premium finance contract.

16. On July 26, 1959, the Chevrolet automobile of Conner insured by the plaintiff was involved in a collision in Horry County, South Carolina, in which five persons were killed.

17. All exhibits objected to at the hearing before me have been considered evidence in the case.

18. The monthly payments were obligations of Conner to Palmetto and were not any part of the insurance premium.

19. Palmetto Development Corporation offered no evidence in the case in its behalf.

## CONCLUSIONS OF LAW.

1. Under the facts in this case Palmetto Development Corporation is estopped from denying that Evans Bunch was its agent in the collection of payments on the premium finance contract signed by Rolland Conner; when Palmetto accepted the last payment due on the contract and not only failed to refund the last payment to Conner but kept it and marked the contract paid June 10, 1959, it is estopped from claiming a default in payments in violation of the contract; it is estopped from seeking a cancellation of the insurance policy. Palmetto cannot direct its agent Bethea to cancel the policy of insurance and at the same time keep the payment on the premium finance contract. Farm Bureau Mut. Auto. Ins. Co. v. Bobo (C.A. 4) 214 F.2d 575 (affirming D.C., 119 F.Supp. 239). Palmetto Development Corporation by its conduct waived strict adherence to or compliance with the terms of the premium finance contract insofar as timely payment was concerned. The payment due by Conner on February 25th was paid by Bunch's check on March 25th, the March 25th payment was three days late in being sent by Bunch, the April 25th payment was not forwarded by Bunch until May 13th, and the May 25th payment was forwarded by Bunch on June 8th. Bunch did not delay forwarding the final payment as long as he did some of the other payments. The testimony shows that this was a common practice, not only regarding the Conner contract but other premium finance contracts on which Bunch collected for Palmetto. Bobo v. Farm Bureau Mut. Auto.

Ins. Co., supra. Therefore, Palmetto had no right to cancel the policy under the premium finance contract or to direct Bethea to cancel it.

2. Where full amount of premium on automobile liability policy is paid to insurer by the finance company at the time of delivery of policy to insured, insurer had no interest in installment payments made by insured to finance company. Crotts v. Fletcher Motor Co., 219 S.C. 204, 64 S.E.2d 540. In this case the annual premium had been paid in full to the plaintiff; the monthly payments to Palmetto by Conner were payments on his obligation to Palmetto and were in no part insurance premiums. McElmurray v. American Fidelity Fire Ins. Co., 236 S.C. 195, 113 S.E.2d 528.

3. "Neither a mere soliciting agent nor a broker who procured the policy for insured has any implied authority to cancel the policy on behalf of insurer." 45 C.J.S. Insurance § 447, page 82. Where the agency agreement provides: " 'The company hereby grants authority to the agent * * * to solicit and submit applications for * * * insurance * * *; to issue and deliver policies * * *; to collect and receipt for premiums * * *; to cancel such policies * * * in the discretion of the agent where cancellation is legally possible; * * * ' " the agent has authority to cancel the policy on behalf of the insurer so long as his acts are not in conflict with the terms of the policy contract. Engelberg v. Home Insurance Co., 251 N.C. 166, 110 S.E.2d 818. But where there is no express authority to cancel, the agent or broker has no authority to cancel a policy on behalf of the insurer. Even if Bethea was acting in connection with his alleged cancellation of the policy as agent of the insurer, he should have proved that he had general authority from the insurer to cancel policies in his discretion. See, Wright v. Grain Dealers Nat. Mut. Fire Ins. Co. (C.A. 4) 186 F.2d 956.

4. Furthermore, I am of the opinion that the premium finance contract is void and unenforceable because it is against public policy.

The policy of insurance here involved was issued by Bethea & Bethea Insurance Agency of Latta, South Carolina, as agents of plaintiff. Section 37–233, Code of Laws of South Carolina 1952, provides that any person who shall do or perform any act or thing in consummating any contract of insurance for or with any company other than for himself, acts as agent of the insurance company for which the act is done or risk taken. In collecting the insurance premium Bethea was acting as agent of plaintiff, yet by the premium finance contract Bethea individually and not as agent of plaintiff, binds himself to cooperate in every manner available to him to aid Palmetto in procuring cancellation of the same policy of insurance by the insurer should Palmetto find cause or ask for cancellation, and further agreed to deliver all monies collected by him under the policy to Palmetto to satisfy any debt of the insured to Palmetto. In making this agreement and in attempting to serve two masters, Bethea obviously has a conflict of interest. As an agent of plaintiff it is his duty to aid it in keeping uncancelled as much good insurance as possible and retain renewals from policyholders while eliminating bad risks; on the other hand, under his agreement with Palmetto his obligation was to get the money to Palmetto and cancel the insurance regardless of the excellence of the risk if Palmetto deemed cancellation would serve its purpose in collecting its money and requested cancellation of the policy.

Plaintiff contends that Palmetto did not receive the final installment under the premium finance contract at its Columbia office within five days after the due date and that Palmetto then wrote Bethea June 8, 1959, advising him of the non-payment, requesting cancellation of the policy and that Bethea forwarded all monies collected to Palmetto. Bethea then, without request from the insurer to cancel the policy and without considering whether cancellation was in the best interest of the insurer, or whether the

contract was in fact in default, but because he had obligated himself to do so, then wrote to Conner on July 8, 1959, twenty-eight days after the payment on the premium finance contract had been paid and the contract marked paid June 10, 1959, advising that the policy would be cancelled as of July 17, 1959. Bethea did not cancel the policy as an agent of the insurer but attempted to cancel the policy at the request of the premium financing company pursuant to his agreement with the finance company. Since it was not shown that Conner was a bad risk and since Maryland Casualty Company is in the business to write and maintain insurance, and not to cancel it, I must assume that plaintiff wanted the business, yet plaintiff lost a premium which had already been paid to it by the cancellation if I assume that cancellation was effected. The conflict of interest of Bethea is further borne out by the fact that Bethea was also a stockholder and later a director of Palmetto Development Corporation when the policy was purportedly cancelled. The result is that Bethea as a stockholder, if not a director, of Palmetto Development Corporation instructs Bethea, the agent of plaintiff, to cancel the policy and send the money to Palmetto Development Corporation. By such a course of conduct Palmetto Development Corporation would flourish, whereupon Bethea would receive his dividend as a stockholder of Palmetto Development Corporation after having already received his commission from the sale of the policy of insurance, and the plaintiff would suffer thereby.

In addition, the agreement by Bethea with Palmetto is in violation of Section 37–147, Code of Laws of South Carolina 1952, which provides that no insurance company or agent thereof shall make any contract of insurance or agreement as to such contract other than as plainly expressed in the policy issued thereon.

The agreement of Bethea & Bethea is an agreement as to the insurance contract, and the policy does not contain anything whatever relative to that agreement. Bethea & Bethea issues the applicant a policy of insurance on the one hand and agrees to take it away with the other.[1]

For the foregoing reasons, I conclude that the plaintiff is not entitled to the relief demanded. I am of the opinion that the policy of insurance had not been cancelled as of July 26, 1959, and that it was in full force and effect at that time. Plaintiff is therefore under the duty to defend the actions in behalf of Rolland Conner and is liable under the terms of the contract of insurance for any judgment obtained against Conner in the pending actions within the limits of the insurance policy.

It is, therefore, Ordered that the complaint be dismissed with costs.

---

1. The agreement between Bethea and Palmetto is also in violation of Section 46–750.26(6), Code of Laws of South Carolina 1952, which is as follows: "The policy, the written application therefor, if any, and any rider or endorsement which does not conflict with the provisions of this chapter shall constitute the entire contract between the parties."