285 So.2d 536 (1973)
Roy BROADWAY
v.
ALL-STAR INSURANCE CORPORATION.
No. 52987.
Supreme Court of Louisiana.
September 24, 1973.
Rehearing Denied October 26, 1973.
*537 C. R. Whitehead, Jr., Whitehead & McCoy, Natchitoches, for plaintiff-applicant.
William P. Crews, Jr., Watson, Murchison, Crews & Arthur, Natchitoches, for defendant-respondent.
SANDERS, Chief Justice.
The Third Circuit Court of Appeal, reversing the trial court, denied the plaintiff insurance benefits in the wake of the loss of a logging vehicle by fire. 267 So.2d 589. We granted certiorari, 263 La. 628, 268 So.2d 679, to review two determinations of the Court of Appeal: first, that an insurance sales agency is, as a matter of law, vested with authority to cancel policies which it has issued, and second, that proof of placing a notice of cancellation in the mails is conclusive as to cancellation of an insurance policy under LSA-R.S. 22:636, despite the failure of the insured to receive it. After review, we reverse the judgment of the Court of Appeal.
The operative facts are clear.
Roy Broadway purchased the vehicle, a Taylor log skidder, in April of 1970, for use in logging operations. For financing, he borrowed $10,000.00 from the Exchange Bank & Trust Company, Natchitoches, Louisiana, which required, as part of the consideration for the loan, that he secure insurance on the machine.
As it turned out, insurance was difficult to get. Lanny Crow, a representative of Southern Farm Bureau Casualty Insurance Company and Broadway's local agent, was unable to write the policy with his own Company. Crow, therefore, contacted Simpson-Scott-Gahagan, Ltd., a general insurance agency operating in the Natchitoches area. Simpson-Scott-Gahagan was also unable to write the policy with any of the companies that it represented, and, acting as a local producing agent or broker, contacted Interstate Surplus Line Underwriters of Shreveport, Louisiana, a sales agency for several foreign insurers. Interstate was successful in securing coverage with one of these insurers, the defendant, All-Star Insurance Corporation. On June 8, 1970, Interstate issued an All-Star policy, including fire protection on the Taylor skidder.
Interstate did not deal directly with the plaintiff in negotiating for or in issuing the policy. All premiums, except the first, were forwarded directly from Broadway to Simpson-Scott-Gahagan, Ltd., which in turn transmitted them to All-Star. Each agency deducted the appropriate commission.
The expiration date of the policy was June 8, 1971. On May 3, 1971, however, Simpson-Scott-Gahagan, Ltd., forwarded a request for cancellation of the policy to Interstate, asserting that certain premiums had not been paid. Pursuant to this request, Interstate placed notices of cancellation in the mails, addressed to Broadway, the Bank, Simpson-Scott-Gahagan, Ltd., and All-Star. The notices addressed to Broadway and the bank, however, were never delivered.
The cancellation notice provided that coverage was terminated at 12:01 a. m. on May 17, 1971. During the night of May 17 or in the early morning of May 18, 1971, the skidder was destroyed by fire. Relying upon the notice of cancellation, All-Star denied liability.
After trial, the district court rendered judgment in favor of the plaintiff for maximum benefits under the policy, plus penalties of 25% and attorneys fees in the amount of $4,000.00. In its reasons for judgment, the court held that Interstate lacked authority to cancel the policy and, as an independent basis for judgment, also held that proof of non-delivery nullified the notice of cancellation which had been placed in the mails in compliance with LSA-R.S. 22:636. It was this judgment which the Court of Appeal reversed.
Although the written agency agreement between All-Star and Interstate contains *538 no provision authorizing Interstate to cancel coverage, the Court of Appeal upheld Interstates' assumption of that power with only brief treatment. Because of the citation of such decisions as Richard v. Springfield Fire & Marine Ins. Co., 114 La. 794, 38 So. 563 (1905) and McNeese v. Brown, 158 So.2d 323 (La.App. 1st Cir. 1963), the Court of Appeal obviously based its decision upon the apparent authority of the insurance sales agency.
Concepts of apparent authority, in our opinion, are irrelevant to the question at hand. Apparent authority is a principal of estoppel, which operates in favor of third persons seeking to bind a principal to an unauthorized act of an agent. In this context, it is both fair and equitable to govern mutual rights and liabilities by the apparent scope of an agent's authority, because third persons, who are not privy to the actual terms of the agency agreement, must rely entirely upon the indicia of authority with which the agent is vested. See Esso Standard Oil Company v. Welsh, 235 La. 593, 105 So.2d 233 (1958) and Interstate Electric Co. v. Frank Adam Electric Co., 173 La. 103, 136 So. 283 (1931).
Here, however, All-Star does not seek to repudiate the acts of its agent. To the contrary, All-Star seeks to claim the benefits of an act which lies outside the agent's specific authority. The issue of authority is not between a third person and All-Star, but between All-Star, the principal, and Interstate, the agent, a context in which the actual authority of the agent governs. Molero v. California Company, 145 So.2d 602 (La.App., 4th Cir. 1962) and Henderson v. Louisville & Nashville Railroad, 3 Orleans App. 43 (1905).
In the present context, an agent not only has express authority, but also implied authority. Unlike apparent authority, implied authority is actual authority, which, while not expressed in the agency agreement, is inferred from the circumstances, purposes, and nature of the agency itself. An agent is vested with the implied authority to do all of those things necessary or incidental to the agency assignment. Indemnity Ins. Co., v. Midwest Transfer Co., 184 F.2d 633 (7th Cir. 1950); Fillgraf v. First Nat. Ins. Co., 218 Iowa 1335, 256 N.W. 421 (1934); Reed v. Linscott, 87 N.H. 139, 175 A. 240 (1934)
In the case at bar, the grant of authority in the agency agreement is both narrow and specific. It provides in pertinent part as follows:
"COMPANY HEREBY GRANTS AUTHORITY to Agent to receive and accept proposals for contracts of insurance which Company lawfully has authority to make covering risks located in the state first above mentioned and any other state in which Agent is authorized to engage in an insurance business, subject to all restrictions placed upon Agent by law and subject further to the following terms and conditions:
"1. BINDING AUTHORITY
"a. Agent does not have the right or authority to bind or accept a risk on behalf of the Company without first obtaining written approval. This written approval may be forwarded either by signed letter, or binder form and/or by telegram or telex. Authority to bind may be extended by specific amendment hereto.
"b. The Company shall have at all times the right to reject applications, alter, suspend or cancel any policies, but in the event of such cancellation, the Company may send notice of such action direct to the policyholder, with a copy to the Agent. Policies not delivered by the Agent must be returned to the Company within thirty days from effective date, in order to secure flat cancellation, except when not allowed by agreement prior to policy issuance." (Italics ours).
A supplement to this grant of authority provided Interstate with the authority to bind All-Star for a period of ten days in *539 order to provide coverage during the period of All-Star's deliberations on the risk.
In both the original and supplemental agreements, however, the authority of the agent was essentially to receive and transmit proposals for contracts of insurance and, whenever All-Star authorized policies, to collect and forward premiums. An argument that the authority to cancel policies is incidental or necessary to these limited purposes is untenable.
This conclusion is not inconsistent with the express language of the policy itself. The policy provides the following procedure for cancellation at the behest of the Company:
". . . This policy may be canceled by the Company [All-Star Insurance Corporation] by mailing to the Insured at the address shown in this policy or last known address written notice stating when, not less than ten (10) days thereafter, such cancelation shall be effective."
We hold, therefore, that Interstate, the general sales agency, had no authority to cancel the All-Star policy and that its attempt to do so was ineffectual. See Allstate Insurance Company v. Austin, 225 F.Supp. 523 (W.D.S.C.1964); Maryland Casualty Company v. Conner, 200 F.Supp. 647 (E.D. S.C.1961); 45 C.J.S. Insurance § 447 (1946).
We find, moreover, as did the district court, that the insured actually received no notice of the cancellation. This poses the question of whether mailing alone satisfies the statutory requirements of notice.
The relevant provisions of LSA-R.S. 22:636 read as follows:
"A. Cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer, or of any binder based on such policy, may be effected as to any interest only upon compliance with either or both of the following:
(1) Written notice of such cancellation must be actually delivered or mailed to the insured or to his representative in charge of the subject of the insurance not less than five days prior to the effective date of the cancellation. (Italics ours).
As used in the statute, mailed to the insured is subject to two interpretations. The first is the depositing of the notice in the official United States mails, addressed to the insured. Under this interpretation, delivery of the notice to the insured is irrelevant.
The second interpretation is that mailed to the insured connotes a completed process, the transmission of the notice through the United States mails. Under this interpretation, affirmative proof of non-delivery renders the notice ineffectual.
The purpose of notice of cancellation is to make known to the insured that his policy is being terminated and to afford him sufficient time to obtain other insurance protection. See American Fidelity & Casualty Company v. Knox, 164 F.Supp. 3 (W.D.La.1958).
An interpretation which permits a deposit in the mails to conclusively terminate coverage undermines the purpose of the notice.
As we held in Skipper v. Federal Insurance Co., 238 La. 779, 116 So.2d 520 (1959), proof of the deposit in the mails creates only a prima facie presumption of delivery under LSA-R.S. 22:636.
In the recent case of Cuccia v. Allstate Insurance Company, 262 La. 545, 263 So.2d 884 (1972), we held that notice could be rebutted by proof of non-delivery. There, we stated:
"It is apparent that Allstate has presented prima facie evidence in accordance *540 with this law to show that the cancellation notice to Cuccia was mailed according to the requirements of the law. Only a rebuttable presumption has been established, however, not an absolute one. Skipper v. Federal Insurance Company, 238 La. 779, 116 So.2d 520 (1959)."
Accordingly, we hold as did the trial court, that the notice of cancellation was ineffectual because of proof of nondelivery. See Cuccia v. Allstate Insurance Company, supra; Townzen v. Allstate Insurance Co., 188 So.2d 474 (La.App. 3rd Cir. 1966); Traders and General Insurance Company v. Mallitz, 315 F.2d 171 (5th Cir. 1963).
From our review of the case, we do not find that the insurer was arbitrary or capricious in withholding payment until the legal and factual questions had been resolved by the courts. These questions were substantial. Hence, the penalties and attorney fees should be disallowed. See Creole Explorations, Inc., v. Underwriters at Lloyd's, 245 La. 927, 161 So.2d 768 (1964).
For the reasons assigned, the judgment of the Court of Appeal is reversed; the judgment of the district court in favor of plaintiff is amended to eliminate the award of penalties and attorney fees and, as amended, the judgment of the district court is reinstated and made the judgment of this Court. All costs are assessed against the defendant.
BARHAM, J., concurs.
DIXON, J., concurs in part and dissents in part.
DIXON, Justice (concurring in part).
I agree that only the company could cancel; such finding makes it unnecessary to decide whether failure to receive notice is relevant. However, I believe the trial judge properly assessed penalties and attorney's fees. R.S. 22:658.