GRISBAUM, Judge.
The defendant, Ultramar Enterprises, Inc., suspensively appeals from a judgment in favor of the plaintiffs, Mr. and Mrs. Earl Boudreaux, ordering a sheriffs sale of property subject to a mortgage held by Mr. and Mrs. Boudreaux. We affirm.
Mr. and Mrs. Boudreaux are the holders of a promissory note secured by Ultramar Enterprises, Inc. payable to the order of bearer in the amount of $201,000, said note bearing interest at the rate of 10 percent per annum for the unpaid balance. The note is paraphed “NE VARIETUR” for identification with an active credit sale and mortgage dated December 27,1978. In the act of credit sale and mortgage, Ultramar Enterprises, Inc. mortgaged in favor of Mr. and Mrs. Boudreaux, and any and all of the holder or holders of the note, property in Jefferson Parish as described in the plaintiffs’ petition. In the act of credit sale and mortgage, the mortgagor agreed that the property would remain mortgaged until the full and final payment on the note. Additionally, Ultramar Enterprises specifically bound itself to keep the buildings on the property constantly insured against the risk of loss by fire, and in failing to do so, to be deemed in default in its obligation to the mortgagees. In such event, the promissory note is to become at the option of the *852 holders, immediately due and payable, the vendors having authority to seize and sell the property by way of executory process without appraisal to the highest bidder.
Mr. and Mrs. Boudreaux filed a petition for executory process on a mortgage note on September 29, 1982 alleging Ultramar Enterprises, Inc. had defaulted by failing to keep the mortgaged premises insured. The defendant filed a petition seeking a temporary restraining order and preliminary injunction denying this default and alleging the insurer had failed to effect notice of cancellation. The trial court denied the defendant’s request for a temporary restraining order and a preliminary injunction, but the Louisiana Supreme Court, on December 8, 1982, granted a writ, which was taken by the defendant, and temporarily stayed the judicial sale, pending its further order. 423 So.2d 1152. On February 11, 1983, the Louisiana Supreme Court further ordered:
Writ Granted. The case is remanded to the district court for an evidentiary hearing on defendant’s petition to enjoin a sale of the defendant’s property by exec-utory process. The hearing shall include, but not be limited to, an inquiry to determine compliance with La.R.S. 22:636 and whether Ultramar Enterprises, Inc., received notification of the insurance cancellation (citing the Broadway case). 430 So.2d 657.
The insurance in question was issued by Liberty Mutual Insurance Company and was to expire on June 3, 1984. A representative of Liberty Mutual, Yves Benoit, testified that because premiums were not paid, the company canceled the insurance on August 9, 1982, said cancellation to be effective September 8 of that year. Victor M. Agurcia, president and stockholder of at least 90 percent of the stock in Ultramar Enterprises, Inc., stated at trial that upon learning of the lapsed insurance, he secured new insurance from another company on September 21, 1982.
The only issue before us is whether the defendant defaulted in September of 1982 in his mortgage obligation to keep the apartment premises insured and to provide the mortgagees with evidence of that insurance. This determination turns solely upon whether the notice of cancellation was actually delivered pursuant to Louisiana Revised Statute 22:636.
Louisiana Revised Statute 22:636, in pertinent part, states:
A. Cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer, or of any binder based on such policy, may be effected as to any interest only upon compliance with either or both of the following:
(1) Written notice of such cancellation must be actually delivered or mailed to the insured or to his representative in charge of the subject of the insurance not less than five days prior to the effective date of the cancellation.
(2) Like notice must also be so delivered or mailed to each mortgagee, pledgee, or other known person shown by the policy to have an interest in any loss which may occur thereunder.
B. The mailing of any such notice shall be effected by depositing it in a sealed envelope, directed to the addressee at his last address as known to the insurer or as shown by the insurer’s records, with proper prepaid postage affixed, in a letter depository of the United States Post Office. The insurer shall retain in its records any such item so mailed, together with its envelope, which was returned by the Post Office upon failure to find, or deliver the mailing to the addressee.
C. The affidavit of the individual making or supervising such a mailing, shall constitute prima facie evidence of such facts of the mailing as are therein affirmed....
The recent case of Aultman v. Rinicker, 416 So.2d 641 (La.App. 2d Cir.1982), in interpreting Louisiana Revised Statute 22:636, provides in pertinent part:
In order to effect cancellation of an insurance policy under LSA-R.S. 22:636 written notice of cancellation must be actually delivered or mailed to the in *853 sured not less than five days prior to the effective date of cancellation. The term ‘mailed to the insured’ connotes a completed process, that is, the transmission of the notice through the United States mail. Broadway v. All-Star Insurance Corporation, 285 So.2d 536 (La.1973); Skipper v. Federal Insurance Company, 238 La. 779, 116 So.2d 520 (1959). The affidavit of the individual making or supervising the mailing of the notice of cancellation, directed to the addressee at his last address as known to the insurer or as shown by the insurer’s records, constitutes prima facie evidence of delivery of the notice of cancellation. Only a rebuttable presumption is established, not an absolute one, and the presumption can be rebutted by proof of nondelivery. Broadway v. All-Star Insurance Corporation, supra; Skipper v. Federal Insurance Company, supra; Cuccia v. Allstate Insurance Company, 262 La. 545, 263 So.2d 884 (1972)....
Mr. Agurcia stated at trial he absolutely did not receive the notice of cancellation from Mr. Benoit, a representative of Mutual Liberty Insurance Company. The record before us shows Mr. Benoit testified he mailed notice of cancellation to the defendant. He also testified he sent a copy of the notice of cancellation to the mortgagee and placed a copy in his own file. Mrs. Bou-dreaux corroborated the testimony of Mr. Benoit by testifying she received her notice of cancellation as the mortgagee, and this letter of notification of cancellation was admitted in evidence at trial. She also testified she spoke with Mr. Benoit to be sure that Mr. Agurcia would be properly notified. The record further shows Ms. Debbie Miller, who was the secretary to Mr. Agurcia, testified she was very much aware of the cancellation in question and that Mr. Agurcia informed her he was aware of the cancellation.
The defendant, in its brief, alleges that the fact Mr. Benoit testified he mailed the notice by “regular mail” and therefore did not receive a receipt proving the letter was delivered, indicates notice of cancellation had not been properly effected. The defendant also alleges that because the plaintiffs failed to submit an affidavit stating Yves Benoit’s statement that notice of cancellation was mailed, there was no prima facie showing of this fact, which showing is required under Louisiana Revised Statute 22:636(C).
We find that the testimony of Mr. Benoit, Mrs. Boudreaux, and Ms. Debbie Miller constitutes a prima facie case that notice of cancellation actually had been delivered, and the defendant failed to rebut this showing.
The provision of Louisiana Revised Statute 22:636(C) stating that the affidavit of the individual making or supervising a mailing shall constitute prima facie evidence of such facts of the mailing merely sets out the minimal method of establishing a prima facie case. The testimony under oath of an unbiased representative insurance company which is not a party to the lawsuit is obviously an acceptable method of establishing a prima facie showing of effective notice. This testimony, along with corroboration by testimony of other witnesses, supports the trial court’s finding that the insurance cancellation was properly effected. The trial court found Mr. Agucier’s testimony to be lacking in credibility, it is within the particular province of the trial court to assess credibility of witnesses. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978). Moreover, Louisiana Revised Statute 22:636 does not require certified mail for notice of cancellation of insurance coverage. Therefore, the trial court did not err in finding the defendant received notice and thus had defaulted in his mortgage obligation.
The defendant has raised other issues which we find to be without merit.
For the reasons assigned, the judgment of the trial court is affirmed; all costs of this appeal are to be assessed against the appellant.
AFFIRMED.