DOUCET, Judge.
Plaintiff, David Withers, instituted this suit to recover insurance benefits in the wake of the loss of his home and other property in a fire. Made defendants therein were Worldwide Insurance Brokers, Inc., Mt. Hawley Insurance Company, Rhodes Insurance Industries Agency, Inc., and Insured Lloyds Insurance Company.[1] Rhodes filed a third party demand against Worldwide.[2] Insured Lloyds filed third party demands against Worldwide, Mt. Hawley, Rhodes, and Evanston Insurance Company.
After trial on the merits, the district court rendered judgment in favor of plaintiff and against the defendants, Worldwide, Mt. Hawley, Rhodes, Evanston, and Insured Lloyds, in solido. Judgment was further rendered in favor of third party plaintiffs, Rhodes, Evanston, and Insured Lloyds against third party defendants, Worldwide and Mt. Hawley.[3] Worldwide, Mt. Hawley, Insured Lloyds, Rhodes, and Evanston appeal.
In August 1983, plaintiff contacted the Thomas Insurance Agency in Natchitoches concerning the possibility of obtaining homeowner’s insurance for his residence in Robeline. Thomas forwarded an application to Worldwide Insurance Brokers, Inc. Worldwide processed the application and forwarded it to Rhodes Insurance Industries Agency, Inc., the managing general agency representing Insured Lloyds Insurance Company. Rhodes accepted plaintiff’s application and issued a policy binding Insured Lloyds to insure plaintiff’s residence and possessions. The policy provided coverage from August 1, 1983 to August 1, 1984.
During the month of October 1983, Rhodes attempted to cancel 252 homeowners’ policies, including plaintiff’s.
Plaintiff received his notice of cancellation and contacted his local agency, Thomas. The attempted cancellation was brought to the attention of the Louisiana Insurance Department which notified Rhodes that such a “mass cancellation” was against public policy and would not be allowed.
Rhodes then decided it would “reinstate” all but fourteen of the policies which it *916 could cancel as bad underwriting risks. Plaintiff’s policy was among those fourteen. No further cancellation notices were mailed to these fourteen policyholders. The evidence indicates that at some point, an employee of Worldwide informed Sherman Wilson, of the Thomas Insurance Agency, that all of the policies would be reinstated and the plaintiff was advised by Thomas that his policy would be reinstated. There is contradictory testimony from Rhodes and Worldwide concerning whether or not proper steps were taken to insure that Thomas, and the plaintiff, were notified that plaintiffs policy was not going to be “reinstated”.
Both Thomas and plaintiff believed the policy was in effect on January 22, 1984, when plaintiff’s home was destroyed by fire. Insured Lloyds denied plaintiff’s claim for insurance proceeds and this litigation ensued.
The trial court ultimately found that plaintiff’s insurance policy was in “full force and effect” when the fire occurred. The judgment in favor of Rhodes, its errors and omissions insurer, Evanston, and Insured Lloyds against Worldwide and its errors and omissions insurer, Mt. Hawley, was apparently based on the finding by the trial court that Worldwide breached its duty to inform Thomas, or plaintiff, that plaintiff’s policy would not be reinstated.
All parties agree that the plaintiff should recover for the loss of his home and property. On appeal, Rhodes, Evanston, and Insured Lloyds contend that the trial court erred in finding that the insurance policy was in full force and effect. They further argue that Worldwide and Mt. Hawley, alone, should be liable for plaintiff’s loss based on Worldwide’s breach of its duty to inform Thomas or plaintiff that the policy would not be reinstated.
Insured Lloyds argues in the alternative that if the trial court correctly found that the policy had not been cancelled, then Insured Lloyds is entitled to judgment against Worldwide and Rhodes, and their errors and omissions insurers, Mt. Hawley and Evanston.
The facts of the instant case are similar to the facts of Broadway v. All-Star Insurance Corp., 285 So.2d 536 (La.1973). In Broadway, Interstate Surplus Line Underwriters was a sales agency for All-Star Insurance Corporation, much the same as Rhodes is a “managing general agency” for Insured Lloyds. Broadway sought to purchase insurance from his local agent. The local agent contacted a broker who in turn contacted Interstate. Interstate issued Broadway a policy underwritten by All-Star. Interstate later attempted to cancel Broadway’s policy. Subsequent to the attempted cancellation, Broadway’s insured property was destroyed by fire and he filed a claim with All-Star. All-Star denied liability claiming that Interstate had cancelled the policy. The agreement between Interstate and All-Star did not give Interstate actual authority to cancel policies underwritten by All-Star. On appeal, the Supreme Court held that All-Star could not claim the benefit of an act, the cancellation, which lay outside of the actual authority of its agent, Interstate, and that Interstate’s attempt to cancel plaintiff’s policy was without effect.
In the case before us, the trial court correctly found that Rhodes was an agent of Insured Lloyds. This fact is not disputed. The agreement between Rhodes and Insured Lloyds did not give Rhodes actual authority to cancel policies. More importantly, the agreement specifically prohibited Rhodes from effecting the mass cancellation of policies without the express written consent of Insured Lloyds. No such consent was given by Insured Lloyds and Rhodes had no actual authority to mass cancel the 252 policies. When Insured Lloyds argues that the plaintiff’s policy was cancelled, it seeks to claim the benefit of the unauthorized act of its agent, Rhodes. Applying the principles enunciated in Broadway, supra, we find that the attempt by Rhodes to mass cancel the policies, including plaintiff’s, was without effect. The notice of cancellation received by plaintiff was ineffective and his policy was *917 in full force and effect on January 22,1984, the date of the fire.
Insured Lloyds asserts that Worldwide cannot raise the issue of the limitation contained in the agreement between itself and Rhodes because such agreements or contracts are intended to govern the legal duties and obligations between the parties thereto. Such an argument cannot be maintained under the circumstances of this case and the holding of the court in Broadway, supra.
LSA-R.S. 22:658 provides for reasonable attorney’s fees and a penalty in the amount of 12% of the total amount of the loss when the insurer fails to make payments to the insured within 60 days after demand. This provision however, is operative only when such failure is found to be arbitrary and capricious.
Insured Lloyds knew, or should have known, of the limitation in its agreement with Rhodes, prohibiting Rhodes from effecting the mass cancellation of policies absent its express written consent. Yet, Insured Lloyds attempted to avoid payment of plaintiff’s claim asserting that Rhodes had in fact cancelled plaintiff’s policy. Considering the aforementioned, we find that Insured Lloyds’ failure to pay plaintiff’s claim was arbitrary and capricious.
Since plaintiff’s policy was never cancelled, neither Rhodes nor Worldwide, nor their errors and omissions insurers, can be held liable for any failure to notify Thomas, or plaintiff, that plaintiff’s policy was not going to be reinstated. The trial court therefore erred when it rendered judgment in favor of plaintiff against Rhodes, Evanston, Worldwide and Mount Hawley in solido with Lloyds. We will amend the trial court judgment accordingly-
insured Lloyds contends the trial court erred in denying its third party claim against Rhodes and its errors and omissions insurer, Evanston. It specifically argues that Rhodes should not have accepted plaintiff’s application for insurance because plaintiff did not fit within the established guidelines for acceptable underwriting risks. This fact is evidenced by the testimony of an underwriting supervisor employed by Rhodes. The record also contains a letter from Charles D. Rhodes, Jr., the president of Rhodes, to Richard Doyle of the Louisiana Department of Insurance, admitting that plaintiff’s policy did not meet Rhodes’ underwriting requirements. Further, the record reflects that Rhodes breached that part of the agreement between Insured Lloyds and Rhodes specifically prohibiting mass cancellation of policies without the express written consent of Insured Lloyds.
An indemnification agreement between Insured Lloyds and Rhodes provides that Rhodes shall indemnify Insured Lloyds:
“... against all liability and also against all loss, expenses, damages, court costs and attorney’s fees which Company may at any time be exposed to, or suffer in any manner whatsoever because of any failure of Broker for any reason to faithfully perform according to all terms and limitations of said Brokerage Agreement, its renewals, modifications, and addenda (hereinafter collectively called ‘Agreement’) or directly or indirectly because of or relating to any act, error or omission of Broker, or otherwise, in the past, present and future.”
Pursuant to this agreement, we find that Rhodes and its errors and omissions insurer, Evanston, are liable to Insured Lloyds for any amounts Insured Lloyds must pay plaintiff under the homeowner’s policy, and as attorney’s fees and penalties under LSA-R.S. 22:658 and the trial court erred in holding otherwise
Finally, for the reasons hereinafter set forth, we conclude that Rhodes is entitled to judgment against Worldwide for all amounts Rhodes must pay Insured Lloyds in satisfaction of the judgment rendered in favor of Insured Lloyds against Rhodes.
The record clearly reflects that following the mass cancellation, Insured Lloyds and Rhodes undertook to reinstate all policies *918 excepting fourteen policies which would not be reinstated for valid underwriting reasons. The Withers policy was among the latter.
Robert Politzer, owner and president of Worldwide, testified that he received information from Richard Doyle of the Louisiana Department of Insurance, that all of the policies would be reinstated. Mr. Polit-zer or Gayle Caldwell, an employee of Worldwide, informed Sherman Wilson of Thomas Insurance Agency that all of the policies would be reinstated. Mr. Wilson, in turn, informed plaintiff of the same. On October 17, 1983, Ms. Caldwell telexed Rhodes requesting confirmation that all of the cancelled policies would be reinstated. On October 18th, Rhodes mailed letters to Worldwide and to Mr. Doyle with an attached list containing the numbers of the fourteen policies which would not be reinstated, together with the corresponding names of the policyholders. Withers’ policy was listed among the fourteen policies which would not be reinstated.
Mr. Politzer testified that he received this letter but not the attached list. However, he admitted receiving a letter from Mr. Doyle, dated October 20th, in which Mr. Doyle referred to the list from Rhodes. In the letter, Mr. Doyle advised Mr. Polit-zer to immediately notify all agents of the fourteen policies which were not going to be reinstated by Rhodes. Apparently, no action to this end was ever taken by Polit-zer. Worldwide received the reinstatement notices on the policies to be reinstated and, on November 17, 1983, received a telex from Rhodes listing the numbers of the fourteen policies which had not been reinstated, but not the names of the policyholders.
Ms. Caldwell stated that Worldwide indexed policyholders by name and was therefore unable to immediately determine which policies would not be reinstated. She planned to match the reinstatement notices with the notices of cancellation. Any left over cancellation notices would presumably be the ones not to be reinstated. Ms. Caldwell stated that this task was to have been done in her spare time. She had not completed this by the time plaintiffs home was destroyed by fire.
Jerry Walls, an employee of Rhodes, stated that she could have easily retrieved the names of the policyholders from Rhodes’ computer had Ms. Caldwell made such a request. Moreover, evidence in the record indicates that it would have only taken two to three hours to accomplish the task had Ms. Caldwell undertaken to do so.
That Worldwide is an agent of Rhodes cannot be disputed. The record contains a copy of a written contract between Worldwide and Rhodes naming Worldwide as an agent of Rhodes. The contract specifies the rights and duties of the parties. It contains guidelines, set by Rhodes, which Worldwide must follow. La.C.C. arts. 2985-2995. Worldwide clearly breached a duty owed by it to Rhodes when it negligently failed to notify plaintiff that his policy was among those which would not be reinstated and thus, is responsible to Rhodes for the damages that result from the non-performance of that duty. La.C.C. art. 3002. The judgment of the trial court will be amended accordingly.
For the above and foregoing reasons, the judgment of the trial court is amended and recast as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, David Withers, and against Insured Lloyds Insurance Company in the sum of $32,000.00, together with the statutory penalties provided for by La.R.S. 22:658 and attorney fees in the amount of $7,000.00, together with legal interest on such sums from date of judicial demand until paid.
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Third Party Plaintiff, Insured Lloyds Insurance Company, and against Rhodes Insurance Industries Agency, Inc. and Ev-anston Insurance Company, in solido, for all sums which Insured Lloyds Insurance Company must pay in satisfaction of the judgment rendered against it in favor of David Withers.
*919 IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Third Party Plaintiff, Rhodes Insurance Industries Agency, Inc., and against Worldwide Insurance Brokers, Inc., for all sums which Rhodes must pay in satisfaction of the judgment rendered against it in favor of Insured Lloyds Insurance Company.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Worldwide Insurance Brokers, Inc. and Mt. Hawley Insurance Company pay all costs at the trial level and on appeal.
JUDGMENT AMENDED AND RECAST.

. Rhodes’ error and omissions insurer, Evans-ton Insurance Company, is not named as a party defendant in plaintiffs petition.

. Rhodes did not make Mt. Hawley Insurance Company, the error and omissions insurer of Worldwide, a third party defendant.