PRESTON H. HUFFT, Judge Pro Tem.
T.J. Truck'ng, Inc. purchased an automotive collision insurance policy for one of its trucks through Michael Dwyer (hereinafter Dwyer), an insurance agent with Bush-Le Normand Insurance Agency, Inc. (hereinafter Bush-Le Normand). The policy was issued on April 18, 1980 by Paxton National Insurance Company (hereinafter Paxton) through the general broker, Insurance Brokers and Managers, Inc. (hereinafter IBM). *1142 The truck was damaged in a November 26, 1980 collision. When payment under the policy was denied, T.J. Trucking, Inc. brought this action against Paxton, IBM and Bush-Le Normand for damages to the truck, penalties and attorney fees. Credit Thrift of America, Inc. joined in the action as the loss payee on the policy.
The petition was amended first to substitute John L. Temple, Robert Temple, and Oliver J. Jackson doing business as T.J. Trucking Co. for T.J. Trucking, Inc. and, secondly, to add Dwyer as an additional defendant with the supplemental allegation that Dwyer as its insurance agent led plaintiffs to believe that there was physical damage insurance on the truck in question when, in fact, Dwyer caused the policy to be cancelled.
Paxton denied any liability on its part and filed a Third Party Demand against IBM and Bush-Le Normand for indemnity and/or contribution in the event it were to be held liable. A general denial was filed by Bush-Le Normand and Dwyer. In its answer, IBM asserted that the policy was properly cancelled by IBM and the plaintiffs had actual knowledge of the cancellation prior to the collision in question.
As a result of discovery, it appears that the September 9, 1980 Notice of Cancellation issued by IBM was mailed to T.J. Trucking, Inc. using the address on the policy instead of the address listed on the Change of Address Notice mailed to IBM by Dwyer on August 1, 1980. A copy of the Notice of Cancellation was received by Bush-Le Normand and Credit Thrift of America, Inc. but was not received by T.J. Trucking, Inc. although there is some reference to Robert Temple discussing a Notice of Cancellation with Credit Thrift of America but believing it to pertain to a liability policy instead of the collision policy in question.
On May 16, 1985, plaintiffs executed a Receipt and Release dismissing Paxton and IBM but reserving their rights against Bush-Le Normand and Dwyer. On June 18, 1985, the District Judge signed the order dismissing Paxton and IBM and reserving plaintiffs’ rights against Bush-Le Normand and Dwyer.
On May 24, 1985 Bush-Le Normand and Dwyer filed a Third Party Demand against Paxton and IBM alleging the following:
II
“Third party plaintiffs are defendants in the original demand who by agreement, were to be indemnified by Insurance Brokers and Managers, Inc., and Paxton National Insurance Company in the event that the plaintiffs are awarded judgment against the third party plaintiffs.
III
Insurance Brokers and Managers, Inc. are the authorized agent for Paxton National Insurance Company with authority to bind Paxton National Insurance Company to indemnity agreements.”
On July 26, 1985, third party plaintiffs amended the Third Party Demand against Paxton and IBM by adding the following allegation:
“Third party plaintiffs aver, in the event and only in the event that they are found to be liable on the original demand by the plaintiff, that they are entitled to indemnification, or, alternatively, contribution, from Insurance Brokers and Managers, Inc. and Paxton National Insurance Company, in solido, on the grounds that Insurance Brokers and Managers, Inc. and/or Paxton National Insurance Company instigated the cancellation of the policy of insurance in question, failed to properly cancel the policy of insurance, and arbitrarily and capriciously failed to pay the benefits owed to the plaintiffs under the policy of insurance.”
A Motion For Summary Judgment was filed by Paxton on the grounds that it had never directly entered into an agreement with Bush-Le Normand and/or Dwyer to indemnify them; never authorized IBM or anyone to enter into such an indemnity agreement on its behalf; and in the ab *1143 sence of such an agreement indemnity or, alternatively, contribution was not due by it since it had entered into a settlement agreement with the plaintiffs and was dismissed from the action. The District Judge granted the Summary Judgment dismissing the Third Party Demand against Paxton. It is from this judgment of dismissal that Bush-Le Normand and Dwyer appeal.
In support of its Motion For Summary Judgment Paxton filed the 10 pieces of correspondence between counsel of record for Bush-Le Normand and Dwyer and counsel of record for IBM during the period September 29, 1981 and September 27, 1984; and an April 24, 1985 letter from IBM to Bush-Le Normand, all of which was furnished to Paxton by Bush-Le Normand and Dwyer in response to Request for Production of all Documents Pertaining to the Entering into an Indemnity Agreement by Paxton; and a copy of the agency contract between Paxton and IBM, together with several covering letters concerning the signing and transmittal of the contract. In opposition to the motion, Bush-Le Normand and Dwyer did not file any affidavits but relied solely on the allegations of their Third Party Demand and the introduction of a copy of the insurance policy in question.
In the September 29,1981-September 27, 1984 correspondence between counsel of record for Bush-Le Normand and Dwyer and counsel of record for IBM there is no mention or reference to Paxton nor is there the slightest indication that Paxton was aware of, much less a party to, the negotiations between counsel of record for Bush-Le Normand and Dwyer on one hand and counsel of record for IBM on the other hand with respect to an agreement by IBM to indemnify Bush-Le Normand and Dwyer. No copies of the foregoing communications were sent to Paxton or its counsel of record.
The only mention of Paxton in the April 24,1985 communication from IBM to Bush-Le Normand was that Paxton had settled with the plaintiffs. In the communication, IBM acknowledged its agreement to defend and indemnify Bush-Le Normand with respect to allegation of faulty notice of cancellation in the original petition but denied the existence of such an agreement with Dwyer because the allegation in the amended petition that Dwyer “lulled” the plaintiffs into believing they had physical damage coverage was not within the realm of defective notice of cancellation but addressed the principal-agent relationship between plaintiffs and Dwyer. The letter does not contain any reference to IBM acting for or on behalf of Paxton with respect to any indemnity agreement negotiations with Bush-Le Normand and Dwyer.
Bush-Le Normand and Dwyer argue that summary judgment should not have been granted because of the existence of the following genuine issues of material fact: (1) Whether IBM had actual authority to bind Paxton to the indemnity agreement, (2) Whether Paxton had clothed IBM with the indicia of apparent authority to bind it to the contract of indemnity, (3) Whether IBM acted within its apparent scope of authority as the agent and authorized representative of Paxton in entering into the contract of indemnity, and (4) Whether IBM intended to bind Paxton to the contract of indemnity.
C.C.P. Art. 966 provides that summary judgment shall be rendered “If the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” Summary judgment is not a substitute for trial on the merits and cannot be rendered in +he absence of a clear showing that there is no genuine issue as to material fact and that the mover therefore is entitled to judgment as a matter of law. Landry v. Brandy, 389 So.2d 93 (La.App. 4th Cir.1980). The burden is on the mover to show that there is no dispute regarding facts material to the suit and all doubts must be resolved against the mover and in favor of a trial on the merits. Lang v. *1144 Dairyland Insurance Company, 368 So.2d 203 (La.App. 1st Cir.1979).
Apparent authority is a principal of es-toppel, which operates in favor of third persons seeking to bind a principal to an unauthorized act of an agent. As such, mutual rights and liabilities are governed by the apparent scope of an agent’s authority because third persons, who are not privy to the actual terms of the agency agreement, must rely upon the evidence of authority with which the agent is vested by the principal and upon which it relied. Broadway v. All-Star Insurance Corp., 285 So.2d 536 (La.1973).
A review of the foregoing discloses that no genuine issue of material fact existed and Paxton was entitled to judgment as a matter of law. The original Third Party Demand merely alleges that by agreement Bush-Le Normand and Dwyer were to be indemnified by IBM and Paxton and that IBM was the authorized agent for Paxton with authority to bind Paxton to indemnity agreements. There is no allegation, nor is there an affidavit, that IBM acted for and on behalf of Paxton in the negotiations between counsel of record for IBM, and Bush-Le Normand and Dwyer with respect to an agreement to indemnify. Nor is there an allegation, or affidavit, that Bush-Le Normand and Dwyer believed or were misled into believing that IBM was acting for or on behalf of Paxton during the course of indemnity agreement negotiations between their counsel of record and counsel of record for IBM.
The contents of the correspondence between counsel of record for Bush-Le Normand and Dwyer, and IBM leave no doubt as to the complete absence of any question or pretense that Paxton was involved either directly or indirectly in any agreement of indemnity with Bush-Le Normand and Dwyer. At the time the agreement was allegedly made, Bush-Le Normand, Dwyer, IBM and Paxton were all defendants in the action brought by plaintiffs; IBM, Bush-Le Normand, Dwyer, and Paxton were represented in the proceeding by individual counsel; and the position of Paxton was antagonistic to IBM, and Bush-Le Normand and Dwyer in that during the entire course of negotiations between counsel of record for Bush-Le Normand and Dwyer, and IBM, Paxton had an outstanding Third Party Demand against both IBM and Bush-Le Normand in the event it were to be cast in judgment. Under such circumstances, negotiations between counsel of record for Bush-Le Normand and Dwyer, and IBM with regard to the indemnification of Bush-Le Normand and Dwyer by IBM could in no possible way have clothed IBM with the apparent authority to bind Paxton to an agreement which would relieve Bush-Le Normand and Dwyer from any liability in the action. Additionally, without apparent authority, IBM could not have bound Pax-ton to an indemnity agreement as the agency contract between IBM and Paxton did not grant such authority to IBM.
Further, the July 26, 1985 amendment to the Third Party Demand does not confer upon Bush-Le Normand and Dwyer the right to indemnity and/or contribution from Paxton. Plaintiffs claim against Paxton was compromised and Paxton was dismissed from the action. Once a defendant has been released from an action, the remaining defendants in the action have no right to assert a claim for indemnity and/or contribution from the released co-defendant. The exclusive remedy of the unreleased defendant is to have the judgment reduced by the virile share of the released defendant. Garrett v. Safeco Insurance Company, 433 So.2d 209 (La.App. 2d Cir. 1983). Thus, Bush-Le Normand and Dwyer, in the absence of an agreement, are precluded from recovering indemnity or contribution from Paxton.
The grant' lg of the Summary Judgment is hereby affirmed.
AFFIRMED.